(Nos. 87874, 87896 cons.—

GAIL LULAY, Appellee, v. MICHAEL LULAY *et al.*, Appellants.

*Opinion filed October 26, 2000.*

456

HEIPLE, J., specially concurring.
RATHJE, J., joined by HEIPLE and FREEMAN, JJ., also specially concurring.

Michael B. Lulay, of Wheaton, appellant *pro se.*

Mirabella & Kincaid, P.C., of Wheaton (William J. Scott Jr., and Patricia A. Fox, of counsel), for appellant Kiley Lulay.

David J. Winthers, of Mullen & Winthers, P.C., of Winfield, and Terence M. Madsen, of Wyanet, for appellee.

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, and Mary E. Welsh, Assistant Attorney General, of Chicago, of counsel), intervenor-appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Michael Lulay and Kiley Lulay were divorced on March 11, 1996. Pursuant to the judgment for dissolution of marriage, Michael and Kiley have joint custody over their three minor children. On November 30, 1998, Gail Lulay, Michael's mother, filed a petition in the circuit

court of Du Page County under section 607(b)(1) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/607(b)(1) (West 1998)), seeking visitation with her three grandchildren.

Michael and Kiley filed a motion to dismiss the petition for visitation. See 735 ILCS 5/2—615 (West 1998). The parents argued that section 607(b)(1) should not be interpreted to permit a grandparent to sue his or her own child for visitation with grandchildren; and that if the statute is construed in this manner, the statute is an unconstitutional infringement on their fundamental liberty interest, as parents, in raising their children. The circuit court denied the parents' motion to dismiss. On the parents' request, however, the circuit court certified the following question of law for interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308):

> "Should section 607 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/607) be interpreted to permit the court to conduct a hearing and determine whether it is in the best interest of a child to visit with grandparents who seek such visitation from their own child? If so, is such a statute constitutional?"

The appellate court denied the parents' application for leave to appeal.

The parents filed separate petitions for leave to appeal in this court. See 177 Ill. 2d R. 315. This court granted the petitions for leave to appeal and consolidated the cases. We subsequently permitted the Attorney General of the State of Illinois to intervene to defend the constitutionality of section 607(b)(1). See 134 Ill. 2d R. 19.

## STATUTE

Section 607(b)(1) of the Illinois Marriage and Dissolution of Marriage Act provides:

> "(b)(1) The court may grant reasonable visitation privileges to a grandparent, great-grandparent, or sibling of any minor child upon petition to the court by the grandparents

or great-grandparents or on behalf of the sibling, with notice to the parties required to be notified under Section 601 of this Act, if the court determines that it is in the best interests and welfare of the child, and may issue any necessary orders to enforce such visitation privileges. Except as provided in paragraph (2) of this subsection (b), a petition for visitation privileges may be filed under this paragraph (1) whether or not a petition pursuant to this Act has been previously filed or is currently pending if one or more of the following circumstances exist:

(A) the parents are not currently cohabiting on a permanent or an indefinite basis;

(B) one of the parents has been absent from the marital abode for more than one month without the spouse knowing his or her whereabouts;

(C) one of the parents is deceased;

(D) one of the parents joins in the petition with the grandparents, great-grandparents, or sibling; or

(E) a sibling is in State custody." 750 ILCS 5/607(b)(1) (West 1998).

## ANALYSIS

### I. Troxel v. Granville

Recently, the United States Supreme Court, in *Troxel v. Granville*, 530 U.S. 57, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000) (plurality opinion), addressed the constitutionality of the State of Washington's nonparental visitation statute. The Washington statute provides: " 'Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances.' " *Troxel*, 530 U.S. at 61, 147 L. Ed. 2d at 54, 120 S. Ct. at 2057-58, quoting Wash. Rev. Code § 26.10.160(3) (1994) (section 26.10.160(3)).

In *Troxel*, the parents, who were never married, had two children. The father regularly brought the children

to visit with his parents. The father, however, committed suicide, and, eventually, the mother informed the paternal grandparents that she wished to limit their visitation with the children to one visit per month. *Troxel*, 530 U.S. at 60, 147 L. Ed. 2d at 53, 120 S. Ct. at 2057. The grandparents in *Troxel* petitioned for visitation under section 26.10.160(3). The trial court found that more extensive visitation with the grandparents was in the children's best interests and therefore ordered the visitation. *Troxel*, 530 U.S. at 61, 147 L. Ed. 2d at 54, 120 S. Ct. at 2058.

The Washington Court of Appeals reversed the lower court's visitation order on the basis that nonparents lack standing to seek visitation under section 26.10.160(3) unless a custody action is pending. The appellate court reasoned that this limitation on nonparental visitation actions was consistent with the constitutional restrictions on state interference with parents' fundamental liberty interest in raising their children. *Troxel*, 530 U.S. at 62, 147 L. Ed. 2d at 54, 120 S. Ct. at 2058, quoting *In re Troxel*, 87 Wash. App. 131, 135, 940 P.2d 698, 700 (1997).

The Supreme Court of Washington disagreed with the appellate court's construction of the statute, holding that the plain language of section 26.10.160(3) gives grandparents standing to seek visitation regardless of whether a custody action is pending. *Troxel*, 530 U.S. at 62, 147 L. Ed. 2d at 55, 120 S. Ct. at 2058, citing *In re Smith*, 137 Wash. 2d 1, 12, 969 P.2d 21, 26-27 (1998). The Washington Supreme Court held, however, that section 26.10.160(3) is an unconstitutional infringement on the fundamental right of parents to rear their children. Specifically, the court found that the statute is too broad because it allows "any person" to petition for forced visitation with the child "at any time" with the only requirement being that the visitation serve the best inter-

est of the child. Thus, the Washington Supreme Court held, the statute is infirm because it allows the state to interfere with the fundamental right of parents to rear their children without requiring a threshold showing of harm to the child as a result of the discontinued visitation. *Troxel*, 530 U.S. at 63, 147 L. Ed. 2d at 55, 120 S. Ct. at 2058-59, citing *In re Smith*, 137 Wash. 2d at 15-21, 969 P.2d at 28-31.

The United States Supreme Court, in a plurality opinion, found that section 26.10.160(3), as applied to the facts of the case, is an unconstitutional infringement on the mother's fundamental liberty interest in raising her children. *Troxel*, 530 U.S. at 67, 147 L. Ed. 2d at 57, 120 S. Ct. at 2060-61. The Court began its analysis with a discussion of the important role that grandparents play in the prevalent existence of single-parent households. The Court pointed out that the nationwide enactment of nonparental visitation statutes is certainly due to the states' recognition of the changing realities of the American family. *Troxel*, 530 U.S. at 64, 147 L. Ed. 2d at 55-56, 120 S. Ct. at 2059. Indeed, all 50 states have statutes that provide for grandparent visitation in some form. *Troxel*, 530 U.S. at 73 n.*, 147 L. Ed. 2d at 61 n.*, 120 S. Ct. at 2064 n.* (citing nonparental visitation statute from each state). In enacting these statutes, states have "sought to ensure the welfare of the children therein by protecting the relationships those children form with such third parties. *** The extension of statutory rights in this area to persons other than a child's parents, however, comes with an obvious cost. For example, the State's recognition of an independent third-party interest in a child can place a substantial burden on the traditional parent-child relationship. *** [T]hese statutes can present questions of constitutional import." *Troxel*, 530 U.S. at 64-65, 147 L. Ed. 2d at 56, 120 S. Ct. at 2059.

Turning to the Washington statute, the Court in

*Troxel* focused on its broad scope. Section 26.10.160(3) allows "any person" to petition for visitation "at any time," and the court may grant such visitation rights whenever "visitation may serve the best interest of the child." The statute contains no requirement that a court must give deference to the parent's decision that visitation would not be in the child's best interest. "Thus, in practical effect, in the State of Washington a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests." (Emphasis in original.) *Troxel*, 530 U.S. at 67, 147 L. Ed. 2d at 57-58, 120 S. Ct. at 2061.

Next, looking at the facts of the case, the Court noted that the grandparents did not allege, and no court has found, that the mother was an unfit parent. This point is pivotal because a court must presume that fit parents act in the best interests of their children. *Troxel*, 530 U.S. at 68, 147 L. Ed. 2d at 58, 120 S. Ct. at 2061, citing *Parham v. J.R.*, 442 U.S. 584, 602, 61 L. Ed. 2d 101, 118, 99 S. Ct. 2493, 2504 (1979). The Court emphasized that the trial court in the case gave no special weight to the mother's determination of her children's best interests. In fact, a review of the trial court's findings showed that the trial court presumed that the grandparents' request for visitation should be granted unless the children would be adversely affected. Thus, the trial court effectively placed upon the mother the burden of disproving that visitation would be in the best interests of her children. *Troxel*, 530 U.S. at 69, 147 L. Ed. 2d at 58-59, 120 S. Ct. at 2062. The Court also stressed that the grandparents did not allege that the mother sought to cut off visitation entirely. Rather, the mother asked that the duration of the visits between her children and the grandparents be shorter than that requested by the grandparents. *Troxel*, 530 U.S. at 71, 147 L. Ed. 2d at 60, 120 S. Ct. at 2062-63.

As applied in the case before it, the Court in *Troxel* found that section 26.10.160(3) is an unconstitutional infringement on the mother's fundamental right to make decisions concerning the care, custody, and control of her children. The Court stated that "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." *Troxel*, 530 U.S. at 72-73, 147 L. Ed. 2d at 61, 120 S. Ct. at 2064.

The Court concluded that, because it rested its decision on the "sweeping breadth" of section 26.10.160(3) and the application of the statute to the facts in the case, it need not consider whether due process requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a prerequisite to granting visitation. *Troxel*, 530 U.S. at 73, 147 L. Ed. 2d at 61, 120 S. Ct. at 2064. The Court continued: "We do not, and need not, define today the precise scope of the parental due process right in the visitation context. *** Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter." *Troxel*, 530 U.S. at 73, 147 L. Ed. 2d at 61, 120 S. Ct. at 2064. Rather, "the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied," and "the constitutional protections in this area are best 'elaborated with care.' [Citation.]" *Troxel*, 530 U.S. at 73, 147 L. Ed. 2d at 61, 120 S. Ct. at 2064.

With *Troxel* in mind, we review the certified question presented in this case.

## II. Statutory Construction

The first portion of the certified question asks: "Should section 607 of the Illinois Marriage and Dissolu-

tion of Marriage Act (750 ILCS 5/607) be interpreted to permit the court to conduct a hearing and determine whether it is in the best interest of a child to visit with grandparents who seek such visitation from their own child?" The answer is yes.

We first review the development of grandparent visitation in Illinois. Prior to the legislature's enactment of section 607(b)(1), Illinois common law provided no visitation rights to grandparents unless there was a showing of "special circumstances." In *Chodzko v. Chodzko*, 66 Ill. 2d 28 (1976), for example, the circuit court of Cook County allowed a maternal grandfather to intervene in the divorce proceeding between his daughter and her husband and receive visitation privileges with his grandchildren over the objection of the mother. The supreme court reversed the order granting visitation on the basis that the grandfather's petition contained no allegations to support a conclusion that either parent was unfit or had forfeited the superior right to the custody and care of the children. *Chodzko*, 66 Ill. 2d at 34.

Moreover, the court in *Chodzko* stated:

"[N]o special circumstances have been established that would warrant granting special visitation rights to the grandfather. It is commendable that a bond of love and affection, as alleged, exists between the grandfather and the minor children; however, this and the allegation of past favors do not justify carving out of the custody and visitation rights of the natural parents still another visitation right and vesting it in the grandfather. The right to determine the third parties who are to share in the custody and influence of and participate in the visitation privileges with the children should vest primarily with the parent who is charged with the daily responsibility of rearing the children. In the absence of unusual circumstances, these matters should not be of judicial concern." *Chodzko*, 66 Ill. 2d at 34-35.

We note parenthetically that the court in *Chodzko* did not address the propriety of the grandfather's suing his own child for visitation rights with the grandchildren.

In 1981, the General Assembly passed the first version of section 607. Specifically, the Illinois Marriage and Dissolution of Marriage Act was amended to provide that the "court may grant reasonable visitation privileges to a grandparent or great-grandparent of any minor child upon the grandparents' or great-grandparents' petition to the court *** if the court determines that it is in the best interest and welfare of the child." Ill. Rev. Stat. 1981, ch. 40, par. 607(b) (as amended by Public Act 82—344, eff. January 1, 1982). This provision was construed as recognizing a grandparent's right to seek visitation after the parents divorced. See *Bush v. Squellati*, 122 Ill. 2d 153, 157-58 (1988), citing *Towne v. Cole*, 133 Ill. App. 3d 380, 384 (1985).

Section 607 was amended the next year to add that the court "may grant reasonable visitation privileges to a grandparent or great-grandparent whose child has died where the court determines that it is in the best interests and welfare of the child." Ill. Rev. Stat. 1983, ch. 40, par. 607(b) (as amended by Public Act 82—1002, eff. September 17, 1982).

In 1985, the General Assembly again added to the language of section 607 to permit grandparent visitation following adoption of the minor by the spouse of the custodial parent after either death or termination of parental rights of the other parent. Ill. Rev. Stat. 1985, ch. 40, par. 607(b) (as amended by Public Act 84—667, eff. September 20, 1985).

In 1989, the provision was rewritten to allow grandparents to seek visitation privileges regardless of whether, among other things, "the parent, through whom the grandparent or great-grandparent is related to the child, is living," and regardless of whether a proceeding

for dissolution of marriage is pending between the parents of the child. Ill. Rev. Stat. 1989, ch. 40, par. 607(b)(1)(A) (as amended by Public Act 86—855, eff. September 8, 1989). Thus, this amendment allowed grandparents to seek visitation regardless of whether the nuclear family was still intact.

The applicable portion of the statute, however, was rewritten a year later. Ill. Rev. Stat. 1991, ch. 40, par. 607(b)(1) (as amended by Public Act 86—1452, eff. July 1, 1991). This amendment reflects the current version of section 607(b)(1), which we are addressing in this case. See 750 ILCS 5/607(b)(1) (West 1998).

In interpreting the scope of section 607(b)(1), we are guided by certain well-established principles of statutory construction. The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997); *Eagan v. Chicago Transit Authority*, 158 Ill. 2d 527, 531 (1994). The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. *Paris*, 179 Ill. 2d at 177; *Eagan*, 158 Ill. 2d at 531-32. The statute should be evaluated as a whole, with each provision construed in connection with every other section. *Paris*, 179 Ill. 2d at 177; *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). Further, in construing a statute, a court is not at liberty to depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *Eagan*, 158 Ill. 2d at 532; *Kraft, Inc.*, 138 Ill. 2d at 189. Where the statutory language is clear and unambiguous, it will be given effect without resort to other aids of construction. *Paris*, 179 Ill. 2d at 177; *Eagan*, 158 Ill. 2d at 532. We conduct *de novo* review when resolving an issue of statutory construction. *Paris*, 179 Ill. 2d at 177-78.

Applying these principles, we hold that section

607(b)(1) permits a grandparent to file a petition for visitation where the grandparent's own child, *i.e.*, the parent, objects to the visitation between the grandparent and grandchild. The plain language of section 607(b)(1) provides that the "court may grant reasonable visitation privileges to a grandparent *** of any minor child upon petition to the court by the grandparents *** if the court determines that it is in the best interests and welfare of the child." 750 ILCS 5/607(b)(1) (West 1998). A petition for visitation may be filed "if one or more of the following circumstances exist: (A) the parents are not currently cohabiting on a permanent or an indefinite basis; (B) one of the parents has been absent from the marital abode for more than one month without the spouse knowing his or her whereabouts; (C) one of the parents is deceased; (D) one of the parents joins in the petition with the grandparents, great-grandparents, or sibling; or (E) a sibling is in State custody." 750 ILCS 5/607(b)(1) (West 1998).

Accordingly, a grandparent, such as Gail Lulay, may file a petition seeking visitation where, as in this case, the first enumerated circumstance is present, *i.e.*, the parents are not currently cohabiting on a permanent basis. In this case, the parents are divorced. The statute makes no exception for a situation where a parent who opposes the visitation is the child of the petitioning grandparent. Thus, the fact that Michael Lulay, Gail's son and the father of the minor children, opposes the visitation does not alter Gail's ability under section 607(b)(1) to petition for visitation. There is simply no language in the statute to support such an interpretation.

Furthermore, three of the enumerated circumstances under which a grandparent may file a visitation petition refer to situations involving "one of the parents," without ever specifying that the petitioning grandparent

must be unrelated to the parent opposing visitation. A grandparent may petition for visitation where "one of the parents has been absent from the marital abode for more than one month without the spouse knowing his or her whereabouts." 750 ILCS 5/607(b)(1)(B) (West 1998). Under this circumstance, the absent parent, by virtue of his or her absence, is presumably not the parent opposing visitation. The statute does not state that the present parent, who is opposing visitation, must be unrelated to the grandparent. A grandparent may also petition for visitation where "one of the parents is deceased." 750 ILCS 5/607(b)(1)(C) (West 1998). The statute does not state that the surviving parent, who is opposing the visitation, must be unrelated to the petitioning grandparent. Finally, a grandparent may petition for visitation where "one of the parents joins in the petition with the grandparents." 750 ILCS 5/607(b)(1)(D) (West 1998). The statute does not state that the nonjoining parent, the parent opposing visitation, must be unrelated to the grandparent.

To construe section 607(b)(1) as barring a visitation petition because the grandparent is related to a parent who opposes visitation would impermissibly add an exception that the legislature did not include. Because the plain language of the statute permits the petition at issue, we need not resort to other aids of statutory construction.

Michael and Kiley Lulay, the parents in this case, cite decisions from other jurisdictions to support their argument that section 607(b)(1) should not be interpreted to permit a grandparent to file a petition for visitation where the grandparent's own child objects. See *Steward v. Steward*, 111 Nev. 295, 303-04, 890 P.2d 777, 782 (1995) (interpreting grandparent visitation statute to "set up a presumption against court-ordered grandparental visitation when divorced parents with full legal rights to the

children agree that it is not in the child's best interest to see the grandparents); *Olds v. Olds*, 356 N.W.2d 571, 574 (Iowa 1984) (holding that grandparent visitation statute does not provide a means for grandparents to seek visitation privileges from their own child); *In re Adoption of a Child by M.*, 140 N.J. Super. 91, 94-95, 355 A.2d 211, 213 (1976) (holding that, although grandparent visitation statute does not prohibit grandparents from seeking visitation privileges when their own child has such rights, "it would seldom, if ever, be in the best interests of the child" to grant such visitation).

We have interpreted our Illinois statute by giving the language used in section 607(b)(1) its plain and ordinary meaning. Therefore, the cases to which the parents cite in this regard are inapposite.

### III. Constitutionality of Statute

Because we have determined that the plain language of section 607(b)(1) permits a grandparent to file a petition for visitation where the grandparent's own child objects to the visitation, we must now address whether section 607(b)(1), as so interpreted and thus applied to this case, where both parents oppose visitation, is constitutional. The answer is no. We hold that section 607(b)(1), as applied to this case, is an unconstitutional infringement on Michael and Kiley Lulay's fundamental liberty interest in raising their children.

We begin our analysis with the recognition that statutes carry a strong presumption of constitutionality, and that the party challenging the constitutionality of a statute bears the burden of rebutting this presumption. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 377 (1997); see *Tully v. Edgar*, 171 Ill. 2d 297, 304 (1996). This court, however, has the duty to interpret the statute and to protect the rights of citizens against acts beyond the scope of the legislature's power. *Best*, 179 Ill. 2d at 378. We review *de novo* the constitutionality of a statute. See

*Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 441 (1998).

A court generally applies the rational basis test in examining the constitutionality of a statute under substantive due process. See *Tully*, 171 Ill. 2d at 304. To satisfy this test, a statute need only bear a rational relation to a legitimate state purpose, and must be neither arbitrary nor discriminatory. *Tully*, 171 Ill. 2d at 304. If, however, challenged legislation impinges upon a fundamental constitutional right, the court will examine the statute under the strict scrutiny standard. *Tully*, 171 Ill. 2d at 304. To withstand the strict scrutiny standard, a statute must serve a compelling state interest, and be narrowly tailored to serve the compelling interest, *i.e.*, the legislature must use the least restrictive means to serve the compelling interest. See *Tully*, 171 Ill. 2d at 304-05; *People v. R.G.*, 131 Ill. 2d 328, 342 (1989). Accordingly, we must first determine whether section 607(b)(1) impinges upon a fundamental constitutional right such that we must review the statute under the strict scrutiny test.

### A. *Fundamental Right*

The fourteenth amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The due process clause "includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.' " *Troxel*, 530 U.S. at 65, 147 L. Ed. 2d at 56, 120 S. Ct. at 2059-60, quoting *Washington v. Glucksberg*, 521 U.S. 702, 720, 138 L. Ed. 2d 772, 787, 117 S. Ct. 2258, 2267 (1997).

As the United States Supreme Court stated in *Troxel*, the "liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty

interests recognized by this Court." *Troxel*, 530 U.S. at 65, 147 L. Ed. 2d at 56, 120 S. Ct. at 2060 (reviewing Court decisions that have recognized and explained the fundamental interest of parents in the upbringing of their children); accord *People v. R.G.*, 131 Ill. 2d 328, 342-43 (1989) (upholding the constitutionality of the "Minors Requiring Authoritative Intervention" statutes (see Ill. Rev. Stat. 1987, ch. 37, par. 803—1 *et seq.*) and recognizing that, under United States Supreme Court precedent, "parents have a liberty interest in bearing and raising their children").

In *Meyer v. Nebraska*, 262 U.S. 390, 67 L. Ed. 1042, 43 S. Ct. 625 (1923), the Court held unconstitutional a statute that prohibited the teaching of certain foreign languages at an elementary school. The Court reasoned that the due process clause protects the rights of parents to "establish a home and bring up children" and "to control the education of their own." *Meyer*, 262 U.S. at 399, 401, 67 L. Ed. at 1045, 1046, 43 S. Ct. at 626, 627. Two years later, in *Pierce v. Society of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 69 L. Ed. 1070, 45 S. Ct. 571 (1925), the Court held unconstitutional a statute that required parents to send their children to public schools, reasoning that the statute interfered with the liberty right of parents "to direct the upbringing and education of children under their control." The *Pierce* Court explained that the "child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Pierce*, 268 U.S. at 535, 69 L. Ed. at 1078, 45 S. Ct. at 573.

Years later, the fundamental right of parents to raise their children remained an important focus in the jurisprudence of the United States Supreme Court. In *Stanley v. Illinois*, 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct.

1208 (1972), the Court held unconstitutional a statute that declared that, upon the death of the mother, children of unwed fathers became wards of the state. The Court reasoned: "The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.' [Citation.]" *Stanley*, 405 U.S. at 651, 31 L. Ed. 2d at 558, 92 S. Ct. at 1212.

Soon after, in *Wisconsin v. Yoder*, 406 U.S. 205, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972), the Court held, albeit primarily on the basis of the first amendment right to free exercise of religion, that a state's compulsory education law did not apply to a group of Amish children. The Court emphasized: "The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." *Yoder*, 406 U.S. at 232, 32 L. Ed. 2d at 35, 92 S. Ct. at 1541-42; see also *Santosky v. Kramer*, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 606, 102 S. Ct. 1388, 1394 (1982) (determining the standard of proof necessary in termination of parental rights case and noting the Court's "historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment"); *Parham v. J.R.*, 442 U.S. 584, 602, 61 L. Ed. 2d 101, 118, 99 S. Ct. 2493, 2504 (1979) (stating that "[o]ur jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children"). In light of this extensive

precedent, the Court in *Troxel* concluded that "it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66, 147 L. Ed. 2d at 57, 120 S. Ct. at 2060.

Section 607(b)(1) allows grandparents to petition for court-ordered visitation with the grandchildren when both parents have decided not to allow such visitation. By allowing the State to interfere with the parents' decision in this regard, section 607(b)(1) impinges upon the fundamental constitutional right of parents to make decisions regarding the upbringing of their children.

The State and the grandmother, Gail Lulay, argue that, even if section 607(b)(1) impinges upon a fundamental right, the statute does not significantly interfere with the fundamental right, and therefore, we should apply the rational basis test in reviewing the constitutionality of section 607(b)(1). See *R.G.*, 131 Ill. 2d at 343 (stating that only statutes that "significantly interfere" with a fundamental right are subject to strict scrutiny), citing *Zablocki v. Redhail*, 434 U.S. 374, 386-88, 54 L. Ed. 2d 618, 630-31, 98 S. Ct. 673, 681-82 (1978). The State contends that section 607(b)(1) does not give grandparents the absolute right to visitation. Rather, the statute merely creates a procedure by which grandparents may petition for visitation under certain circumstances. The State points out that section 607(b)(1) states only that a court "*may* grant *reasonable* visitation privileges" (emphasis added) (750 ILCS 5/607(b)(1) (West 1998)) and that the grandparents have the burden of proving that visitation is in the child's best interests and welfare.

In light of the nature of the fundamental right at stake, the State's and the grandmother's argument is not persuasive. Encompassed within the well-established fundamental right of parents to raise their children is

the right to determine with whom their children should associate. See *Hoff v. Berg*, 595 N.W.2d 285, 291 (N.D. 1999) (stating that "[d]eciding when, under what conditions, and with whom their children may associate is among the most important rights and responsibilities of parents," in holding that its most recent grandparent visitation statute was unconstitutional). It is the role of parents to nurture their children and to influence and shape their children's character. As the United States Supreme Court has recognized, "[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Prince v. Massachusetts*, 321 U.S. 158, 166, 88 L. Ed. 645, 652, 64 S. Ct. 438, 442 (1944). This "preparation for obligation" includes the parents' determination of who will be instrumental in the development of their child's personality and character. Section 607(b)(1) allows the state to usurp the decisionmaking function of parents with respect to the relationships that their children will have. This decisionmaking function lies at the core of parents' liberty interest in the care, custody, and control of their children. To hold that section 607(b)(1) is not a significant interference with the fundamental right of parents to raise their children would be to effectively obliterate that fundamental right.

The significant interference that section 607(b)(1) has on parents' fundamental right is further evidenced by the procedure contemplated by the statute. The grandparents may file a petition for visitation under certain circumstances: in this case, where the parents are divorced. The parent or parents are then haled into court. The parents must presumably hire attorneys, and then present evidence and defend their decision regarding the visitation before a trial court. The parents' authority over their children is necessarily diminished by

this procedure. This can only be characterized as a significant interference with parents' fundamental right to make decisions regarding the upbringing of their children. Indeed, the "burden of litigating a domestic relations proceeding can itself be 'so disruptive of the parent-child relationship that the constitutional right of a custodial parent to make certain basic determinations for the child's welfare becomes implicated.' " *Troxel*, 530 U.S. at 75, 147 L. Ed. 2d at 62, 120 S. Ct. at 2065, quoting 530 U.S. at 101, 147 L. Ed. 2d at 78, 120 S. Ct. at 2079 (Kennedy, J., dissenting).

In comparison, in *People v. R.G.*, 131 Ill. 2d 328, 343-44 (1989), this court concluded that the "Minors Requiring Authoritative Intervention" statutes (see Ill. Rev. Stat. 1987, ch. 37, par. 803—1 *et seq.*) "necessarily affect[ ] the fundamental right of the parents of a runaway minor to control over their family." Those statutes provide, among other things, that if the state takes a minor into limited custody and the minor refuses to return home, the state, during the first 21 days, must refuse any demand made by the parents to return the child home. The court reasoned that, even though "the State neither takes the minor out of the home nor alters the parents' temporary or permanent custody of the minor, the state nevertheless intercedes, on behalf of the minor, in the family relationship." *R.G.*, 131 Ill. 2d at 344. Thus, the statutes "significantly interfere[ ] with the family relationship and can only be justified if the State has a compelling interest." *R.G.*, 131 Ill. 2d at 344.

Likewise, by allowing the state to override the decisions of parents regarding the upbringing of their children, section 607(b)(1) significantly interferes with the fundamental rights of parents. Indeed, section 607(b)(1) ultimately allows the state, under certain circumstances, to force parents to deliver their children to individuals whom the parents have decided the children should not

see. The constitutionality of section 607(b)(1), which significantly interferes with a fundamental constitutional right, must therefore be evaluated under strict scrutiny. See *Tully*, 171 Ill. 2d at 304.

### B. *Strict Scrutiny*

As discussed, to withstand the strict scrutiny test, a statute must serve a compelling state interest, and the statute must be narrowly tailored to serve the compelling interest. See *Tully*, 171 Ill. 2d at 304-05; *R.G.*, 131 Ill. 2d at 342. The State and the grandmother argue that the state has a compelling interest, as *parens patriae*, to protect children whose lives have been disrupted through certain triggering events such as the divorce of the parents. The State cites the decision in *West v. West*, 294 Ill. App. 3d 356, 364 (1998), which, in upholding the facial validity of section 607(b)(1), reasoned that the state "has a compelling interest in maintaining and safeguarding an established grandparent-grandchild relationship where it has been proven by the grandparent that it is in the best interest of the child for the relationship to continue."

The State also cites legislative history to support the existence of a compelling interest in this case. When the first version of the Illinois grandparent visitation statute was before the General Assembly, the bill's sponsor, Representative Matijevich, argued that the statute "will help assure that close grandparent-child ties and relationships will not be severed because of divorce." 82d Ill. Gen. Assem., House Proceedings, May 6, 1981, at 146 (statements of Representative Matijevich). Representative Stewart argued that "the relationship of grandchildren and their grandparents should be one that the state should encourage, and I believe that grandparents should have an opportunity even if the parents cannot see their way clear [to] provi[d]ing them one, to allow that relationship to continue. *** Certainly children in divorce

cases do need some basis of security. \*\*\* [T]he opportunity of continuing a relationship with grandparents is important \*\*\*." 82d Ill. Gen. Assem., House Proceedings, May 6, 1981, at 149-50 (statements of Representative Stewart). Representative Topinka added that "the trauma of an abrupt termination of a meaningful relationship with grandchildren can really be detrimental to the child. This provides the entry for grandparents to have some redress to get to their \*\*\* grandchildren, and again to create some form of family." 82d Ill. Gen. Assem., House Proceedings, May 6, 1981, at 150-51 (statements of Representative Topinka).

In contrast, the parents cite decisions from other jurisdictions that question the premise that grandparent visitation is always beneficial to the child. In *Brooks v. Parkerson*, 265 Ga. 189, 194, 454 S.E.2d 769, 773 (1995), for example, the Supreme Court of Georgia held its grandparent visitation statute unconstitutional and noted that "there is insufficient evidence that supports the proposition that grandparents' visitation with their grandchildren always promotes the children's health or welfare." Moreover, "even if such a bond exists and would benefit the child if maintained, the impact of a lawsuit to enforce maintenance of the bond over the parents' objection can only have a deleterious effect on the child." *Brooks*, 265 Ga. at 194, 454 S.E.2d at 773. Likewise, in *In re Application of Herbst*, 971 P.2d 395, 399 (Okla. 1998), the Supreme Court of Oklahoma, in holding that the Oklahoma grandparent visitation statute was unconstitutional as applied to parents who were married and living together and who both opposed the grandparent's visitation with their child, reasoned that a "vague generalization about the positive influence many grandparents have upon their grandchildren falls far short of the necessary showing of harm which would warrant the state's interference with this parental decision regarding who may see a child."

Generalizations about whether grandparent visitation is beneficial to the children are not determinative of this case. We recognize that the state has a compelling interest in the welfare of minors under certain circumstances. Indeed, this court in *R.G.* held that the rights of parents must yield to the state's compelling interest to intercede on behalf of minors who have absented themselves from home without parental consent. *R.G.*, 131 Ill. 2d at 353. The court reasoned that "[w]hen a minor detaches himself or herself from parental authority by running away from home, the minor jeopardizes his or her welfare. The minor must find money, food and shelter, not to mention adult guidance, schooling, and medical care, among other things." *R.G.*, 131 Ill. 2d at 346.

Similarly, in *Prince v. Massachusetts*, 321 U.S. 158, 88 L. Ed. 645, 64 S. Ct. 438 (1944), the Court held that a state's child labor laws, which prohibited minors from selling merchandise on a public street, were constitutional as applied to the case. The Court therefore upheld the conviction of a parent under these statutes for allowing her child to sell religious magazines on a public street. The Court recognized the fundamental right of parents to raise their children but reasoned that the state, acting as *parens patriae*, may restrict parents' control by such things as requiring school attendance, mandating vaccination for the children, and regulating the children's labor. See *Prince*, 321 U.S. at 166-67, 88 L. Ed. at 652-53, 64 S. Ct. at 442; see also *Yoder*, 406 U.S. at 230, 32 L. Ed. 2d at 33, 92 S. Ct. at 1540 (distinguishing *Prince* on the basis that exempting Amish children from compulsory school attendance law was not a case in which "any harm to the physical or mental health of the child or to the public safety, peace, order, or welfare has been demonstrated or may be properly inferred").

Here, the State essentially argues that it has a compelling interest in maintaining the relationship between

a grandparent and her grandchildren where the children's parents are divorced yet stand united in their parental decision that the children should not visit with the grandparent. The State maintains that it has an interest under these circumstances in protecting these children whose lives have been disrupted because of their parents' divorce. This interest is nothing like the compelling interests involved in cases such as *R.G.* and *Prince.* Moreover, the parents in this case, Michael and Kiley Lulay, have not been alleged to be unfit. We therefore presume that they are acting in the best interests of their children. See *Troxel,* 530 U.S. at 67, 147 L. Ed. 2d at 58, 120 S. Ct. at 2061. Although the parents are divorced, they agree that it would not be in the best interests of their children to spend time with their grandmother.

We are not unsympathetic to the plight of grandparents who wish to visit with their grandchildren. In fact, we commend grandparents who are involved in the lives of their grandchildren and recognize their important role in many families. Nevertheless, in this case, we cannot allow the state to use its power to impose its judgment that visitation may be better for the grandchildren over the joint decision of two fit parents who have determined that the visitation should not occur. The facts of this case do not warrant the state's interference with the parents' joint decision regarding who may have visitation privileges with their children. To allow such interference would unconstitutionally infringe on the parents' well-established fundamental liberty interest in making decisions regarding the upbringing of their children.

We hold that section 607(b)(1), as interpreted and applied to this case, does not serve a compelling state interest and therefore does not satisfy the strict scrutiny test. We therefore hold that section 607(b)(1), as applied to this case, is an unconstitutional infringement on Michael and Kiley Lulay's fundamental liberty interest in raising

their children. Because we hold that the application of section 607(b)(1) to this case is unconstitutional, we need not address the father's argument that section 607(b)(1) is facially unconstitutional. We note that the State and the grandmother maintain that this argument is outside the scope of the certified question.

## CONCLUSION

Section 607(b)(1) permits a grandparent to file a petition for visitation where the grandparent's own child, *i.e.*, the parent, objects to the visitation between the grandparent and grandchild. Therefore, we answer the first portion of the certified question in the affirmative. We hold, however, that section 607(b)(1), as applied to this case, is an unconstitutional infringement on Michael and Kiley Lulay's fundamental liberty interest in raising their children. We thus answer the second portion of the certified question in the negative.

We reverse the decision of the circuit court of Du Page County, which denied the parents' motion to dismiss Gail Lulay's petition for visitation. We remand this cause to the circuit court of Du Page County with directions to dismiss Gail Lulay's visitation petition.

*Reversed and remanded with directions.*

JUSTICE HEIPLE, specially concurring:

I agree with the decision to reverse the trial court on grounds of unconstitutionality. However, the majority fails to settle the issue of grandparental visitation under our statute. The majority finds that section 607(b)(1) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/607(b)(1) (1998) is unconstitutional as applied to this case's particular set of facts. This leaves open the possibility that other grandparents, under a slightly different set of facts, might successfully petition for grandparent visitation under section 607. Section 607, however, should be deemed unconstitutional on its face.

In *Troxel v. Granville*, 530 U.S. 57, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000), a mother in the State of Washington tried to limit visitation after the father of her children committed suicide. The paternal grandparents responded by petitioning for visitation. The United States Supreme Court noted that, under the grandparent visitation statute in effect in Washington, "a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests." (Emphasis in original.) *Troxel*, 530 U.S. at 67, 147 L. Ed. 2d at 57-58, 120 S. Ct. at 2061. The Court went on to state that "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." *Troxel*, 530 U.S. at 72-73, 147 L. Ed. 2d at 61, 120 S. Ct. at 2064.

The statute at issue in this case, section 607, states in pertinent part that:

"The court may grant reasonable visitation privileges to a grandparent, great-grandparent, or sibling of any minor child upon petition to the court by the grandparents or great-grandparents or on behalf of the sibling \*\*\* if the court determines that it is in the best interests and welfare of the child \*\*\*. \*\*\* [A] petition for visitation privileges may be filed under this paragraph if one or more of the following circumstances exist:

\* \* \*

(C) one of the parents is deceased[.]" 750 ILCS 5/607(b)(1)(C) (West 1996).

Thus, under section 607, if one parent dies, a grandparent can petition for visitation, which can be granted if the court finds that visitation is in the best interests of the child. This case is simply *Troxel* by a different name and is precisely the remedy the Supreme Court held unconstitutional. The rationale of *Troxel* clearly points to a

ruling that section 607 be held unconstitutional on its face. Accordingly, I respectfully specially concur.

JUSTICE RATHJE, also specially concurring:

The majority holds that section 607 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/607 (West 1998)) allows Gail Lulay to file a petition in this case and that "[t]o allow such interference would unconstitutionally infringe on the parents' well-established fundamental liberty interest in making decisions regarding the upbringing of their children" (193 Ill. 2d at 479). With both of those propositions, I agree. The majority then continues, holding that the statute is unconstitutional only *"as interpreted and applied to this case."* (Emphasis added.) 193 Ill. 2d at 479. With that, I respectfully disagree.

I would hold the statute unconstitutional on its face. In the majority's own words,

"section 607(b)(1) allows the State to usurp the decision-making function of parents with respect to the relationships that their children will have. This decisionmaking function lies at the core of parents' liberty interest in the case, custody, and control of their children." 193 Ill. 2d at 474.

Contrary to the majority's conclusion, such usurpation is not a function of the particular facts in this case. We are reviewing this case not because Gail Lulay simply failed to allege that Michael and Kiley Lulay are unfit parents. Rather, this case is before us because section 607(b)(1), *on its face,* does not require any such allegation before *any* parent can be dragged into court to defend his or her parental decisionmaking to the state. Consequently, the fatal flaw that the majority so astutely identifies in the passage above will be present in *every* section 607(b)(1) case, and the statute is unconstitutional on its face. This is a facial flaw, and I would hold section 607(b)(1) unconstitutional on its face.

JUSTICES HEIPLE and FREEMAN join in this special concurrence.