(No. 89599.—

*In re* M.H. *et al.*, Minors (The People of the State of Illinois, Appellant, v. V.D., Appellee).

*Opinion filed May 24, 2001.*

James E. Ryan, Attorney General, of Springfield, and Paul A. Logli, State's Attorney, of Rockford (Joel D. Bertocchi, Solicitor General, William L. Browers and Anne S. Bagby, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Martin P. Moltz and Sally A. Swiss, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

Donald P. Sullivan, of Rockford, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

In July 1998, the State filed a "Supplemental Petition for Termination of Parental Rights and Power to Consent to Adoption" (supplemental petition) with respect to each of respondent V.D.'s two minor daughters, M.H. and T.H. Respondent admitted to count III of the supplemental petitions, which alleged that she failed to make reasonable efforts to correct the conditions that were the basis of the minors' removal or to make reasonable progress toward the return of the minors to her within 12 months after adjudication of neglect. The circuit court of Winnebago County, after inquiring whether respondent understood that she had a right to require the State to prove her unfit, accepted respondent's admission to count III. No factual basis was elicited before the circuit court accepted the admission of unfitness. Following a best interests hearing, respondent's parental rights were terminated.

On appeal, respondent argued that the State should have elicited a factual basis prior to accepting her admission, as the State is required to do when a criminal defendant enters a guilty plea pursuant to Supreme Court

Rule 402(c) (177 Ill. 2d R. 402(c)). The appellate court agreed and reversed and remanded. 313 Ill. App. 3d 205. We granted the State's petition for leave to appeal pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315).

## BACKGROUND

Respondent has six children. This appeal involves respondent's parental rights only with respect to M.H., born on April 28, 1993, and T.H., born on June 3, 1989. On August 1, 1995, the circuit court adjudicated M.H. and T.H. neglected because they lived in an environment injurious to their welfare in that one of their brothers, J.H., played with matches and on occasion set things on fire, thereby placing M.H. and T.H. at risk of harm. The circuit court appointed the Department of Children and Family Services (DCFS) as the minors' guardian and custodian and allowed DCFS to place the children with respondent. In February 1996, M.H. and T.H. were removed from respondent's custody because of poor conditions in the home and were placed with respondent's sister. Later, M.H. and T.H. were placed in separate foster homes.

After M.H. and T.H. were adjudicated neglected, a hearing was held in February 1998, regarding respondent's youngest son, Mi. H. During the hearing, respondent stipulated that M.H. and T.H. had been sexually molested by their brothers and that respondent had failed to protect them. Based on this stipulation, evidence, and testimony, the circuit court found Mi. H. to be an abused minor and made him a ward of the court.

In July 1998, the State filed two supplemental petitions for termination of respondent's parental rights with respect to M.H. and T.H. The petitions alleged that respondent was unfit because she (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 1996)); (2) failed to protect the minors from conditions

that were injurious to their welfare (750 ILCS 50/1(D)(g) (West 1996)); and (3) failed to make reasonable efforts to correct the conditions that were the basis of the minors' removal, or to make reasonable progress toward the return of the minors to her within 12 months after the adjudication of neglect (750 ILCS 50/1(D)(m) (West 1996)).

During the January 1999 termination hearing, the State informed the court that respondent would admit that she failed to make reasonable progress towards the return of M.H. and T.H. to her home. Respondent's attorney stated that he had thoroughly discussed respondent's admission with her. The court then asked respondent whether she understood her right to have the State prove by clear and convincing evidence that she was unfit:

"THE COURT: Okay. I want to be clear on the record, [V.D.], that you have a right of requiring [that] the State prove the allegations, including the allegations that you failed to make reasonable progress on your service plan, that the State has a very high burden of proof, they can demonstrate by clear and convincing evidence that you failed to follow through or failed to progress, basically, in terms of meeting your service plan goals, finishing whatever classes or counseling that was required in order that [M.H.] and [T.H.] can be returned to you. Do you understand that you have the right to require that the State present a trial, and if you agree to this you are giving up your right to that?

MR. BRENNER [respondent's attorney]: [V.D.]?

THE COURT: Did you want to take a moment to talk to your attorney more? You are hesitating, so I don't want to be—This is a big step, and I want you to be comfortable with it, and I want your [sic] to understand what's being said. What I understand is if you admit to this then the question becomes, at the point in time we set the second portion of it. It's a two-part consideration, first the unfitness issue and then what's in the best interests, and before anything would be done affecting your parental rights find-

ings would have to be made. It would have to be found it would not be in the children's best interests to go home with you, or whatever, but the first part is—what we are talking about today—and you do have the right to require the State to prove that you are unfit, so if you give up that right I just want that to be made with your understanding and your agreement. Do you understand that?

[RESPONDENT]: Yeah.

THE COURT: Are you agreeable with that?

[RESPONDENT]: Yeah."

Without further evidence, the court accepted respondent's admission.

In April and June of 1999, the circuit court held hearings on the best interests of M.H. and T.H. Based on the testimony of caseworkers, respondent, and respondent's husband, the circuit court found that it was in the best interests of M.H. and T.H. that respondent's parental rights be terminated.

The appellate court for the second district reversed, holding that the circuit court was required to determine that a factual basis existed for respondent's admission of unfitness. The appellate court analogized termination of parental rights proceedings to criminal proceedings and stated that, although Supreme Court Rule 402(c) does not directly apply to admissions of parental unfitness, the precautionary measures of Rule 402(c) should apply in parental rights termination proceedings. 313 Ill. App. 3d at 212.

The court relied on *Santosky v. Kramer*, 455 U.S. 745, 762, 71 L. Ed. 2d 599, 612, 102 S. Ct. 1388, 1399 (1982), in which the United States Supreme Court stated that "the factfinding stage of a state-initiated permanent neglect proceeding bears many of the indicia of a criminal trial." The appellate court concluded that the protection afforded by a factual-basis inquiry is "necessary" and will ensure that a parent's admission is knowing and voluntary. 313 Ill. App. 3d at 215.

The appellate court noted that no facts were elicited

at the hearing pertaining to respondent's unfitness, and the supplemental petitions contained only general allegations. Relying on *In re D.L.*, 191 Ill. 2d 1 (2000), the court rejected the State's argument that there was sufficient evidence to accept respondent's admission based on the evidence presented at the February 1998 adjudicatory and subsequent best interests hearings regarding respondent's son, Mi. H. The court concluded that since *D.L.* allowed for consideration of the parents' conduct only within the 12 months following the adjudication of neglect, abuse, or dependency, the circuit court could consider evidence of respondent's reasonable progress only from August 1, 1995, to August 1, 1996. 313 Ill. App. 3d at 216. The appellate court vacated respondent's admission of unfitness for lack of a factual-basis determination, reversed the order terminating respondent's parental rights, and remanded the cause to the circuit court for a new hearing to determine respondent's fitness.

## ANALYSIS

We first address the appropriate standard of review. Ordinarily, a circuit court's finding as to fitness is afforded great deference on review. The circuit court is in the best position to make factual findings and to assess the credibility of witnesses; accordingly, a reviewing court will reverse a circuit court's ruling only if it is against the manifest weight of the evidence. *In re Adoption of Syck*, 138 Ill. 2d 255, 274 (1990). In the present case, however, the circuit court's ruling was based not on testimony or factual findings, but solely on respondent's admission. Therefore, the question presented in this case, whether the circuit court was required to elicit a factual basis prior to accepting respondent's admission, is a question of law and will be reviewed *de novo*. *Woods v. Cole*, 181 Ill. 2d 512, 516 (1998).

The fourteenth amendment to the United States Con-

stitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. The due process clause "guarantees more than fair process" as it also "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719-20, 138 L. Ed. 2d 772, 787, 117 S. Ct. 2258, 2267 (1997). These liberty interests include the right to contract, engage in an occupation, acquire knowledge, marry, establish a home and raise children, and worship God. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572, 33 L. Ed. 2d 548, 558, 92 S. Ct. 2701, 2706-07 (1972), citing *Meyer v. Nebraska*, 262 U.S. 390, 399, 67 L. Ed. 1042, 1045, 43 S. Ct. 625, 626 (1923).

In *Troxel v. Granville*, 530 U.S. 57, 65, 147 L. Ed. 2d 49, 56, 120 S. Ct. 2054, 2060 (2000), the United States Supreme Court stated that "the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." Parental rights protected by the due process clause include the right to bring up one's children and control their education (*Pierce v. Society of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534-35, 69 L. Ed. 1070, 1077-78, 45 S. Ct. 571, 573 (1925)), and the freedom of personal choice in the matters of family life (*Santosky*, 455 U.S. at 753, 71 L. Ed. 2d at 606, 102 S. Ct. at 1394). Illinois courts have also recognized a parent's liberty interest in raising children. See, *e.g.*, *Lulay v. Lulay*, 193 Ill. 2d 455, 470-71 (2000); *People v. R.G.*, 131 Ill. 2d 328, 342 (1989); *In re Enis*, 121 Ill. 2d 124, 128-29 (1988); *In re Vanessa C.*, 316 Ill. App. 3d 475, 481 (2000); *In re D.R.*, 307 Ill. App. 3d 478, 482 (1999).

Although the United States Supreme Court and Illinois courts recognize a parent's fundamental right in

the care, custody, and control of his or her children, courts also recognize that parental rights must sometimes be terminated. Because of the liberty interests involved, courts will not easily terminate those rights. *In re Paul*, 101 Ill. 2d 345, 351-52 (1984). The United States Supreme Court has noted that "[w]hen the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it." *Santosky*, 455 U.S. at 759, 71 L. Ed. 2d at 610, 102 S. Ct. at 1397. Therefore, procedures involved in terminating parental rights must meet the requisites of the due process clause. *Santosky*, 455 U.S. at 753, 71 L. Ed. 2d at 606, 102 S. Ct. at 1394.

In this case, we must ascertain whether due process requires a circuit court to first determine whether a factual basis exists for a parent's admission of unfitness. Our analysis begins with the Supreme Court's decision in *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). There, the Court addressed the issue of whether the due process clause of the fifth amendment required an evidentiary hearing prior to the termination of a recipient's Social Security disability benefit payments. *Mathews*, 424 U.S. at 323, 47 L. Ed. 2d at 26, 96 S. Ct. at 897. The Court identified three factors to be considered in determining what due process requires: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute safeguards would entail. *Mathews*, 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903.

Although the *Mathews* case dealt with a property interest in disability benefits, the Supreme Court has ap-

plied the *Mathews* factors to cases involving the termination of parental rights. In *Lassiter v. Department of Social Services*, 452 U.S. 18, 31, 68 L. Ed. 2d 640, 652, 101 S. Ct. 2153, 2161-62 (1981), the Court was asked to decide whether due process required the appointment of counsel for an indigent parent in a parental rights termination proceeding. Applying the *Mathews* factors, the Court found that: (1) the parent's interest was extremely important; (2) the complexity of the proceeding, together with an uncounseled parent, could lead to an erroneous deprivation of the parent's rights; and (3) the State had an interest in a correct decision and a strong interest in informal procedures. *Lassiter*, 452 U.S. at 31, 68 L. Ed. 2d at 652, 101 S. Ct. at 2161-62. After considering the presumption against the right to appointed counsel in the absence of a possible loss of physical liberty, the Court found no due process violation in the trial court's failure to appoint counsel. *Lassiter*, 452 U.S. at 32-33, 68 L. Ed. 2d at 652-53, 101 S. Ct. at 2162-63. See also *Santosky*, 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (determining the standard of proof required in a parental rights termination case and applying the *Mathews* factors, the Court: (1) reiterated the parent's fundamental liberty interest in raising a child; (2) noted an increased burden of proof could reduce the possibility of erroneous terminations; and (3) stated a higher standard would promote the welfare of the child through accurate decisions without any burdens for the State or the fact finder).

Illinois courts have also applied the *Mathews* factors in determining whether procedures followed in a parental rights termination proceeding satisfied the constitutional requirements of due process. In *D.R.*, 307 Ill. App. 3d at 482-84, the appellate court was asked to decide whether a mother's due process rights were violated when the circuit court barred her counsel from cross-examining

witnesses, presenting a defense, or making an argument because of the mother's absence in court, even though she was eight months pregnant and had a mandatory meeting with her probation officer that day. Applying the *Mathews* factors, the appellate court held that: (1) the mother had a liberty interest in maintaining her parental relationship; (2) the procedures used by the circuit court led to an erroneous deprivation of her parental rights; and (3) there would not have been an undue burden on the government in allowing the mother's counsel to present evidence or cross-examine witnesses. See also *Vanessa C.*, 316 Ill. App. 3d at 482-83; *In re M.R.*, 316 Ill. App. 3d 399, 402-03 (2000); *In re C.J.*, 272 Ill. App. 3d 461, 465-66 (1995).

We now turn to the application of the *Mathews* test to the facts of this case. The private interest at stake here is the interest of a parent in the control, custody, and care of her child. It is well established that this interest is fundamental and will not be terminated lightly. See *Lulay*, 193 Ill. 2d at 470-71; *Paul*, 101 Ill. 2d at 351-52. Prior to children being adjudicated wards of the court, the State must prove abuse, neglect, or dependence by a preponderance of the evidence. *In re N.B.*, 191 Ill. 2d 338, 343 (2000). Before a circuit court can adjudicate a parent unfit and terminate parental rights, the State must prove by clear and convincing evidence that the parent is unfit. *Syck*, 138 Ill. 2d at 275. These burdens underscore the importance of parents' fundamental right in the control, custody, and care of their children and the fact that these rights may not be easily taken away.

Next, we believe that the procedures, or lack thereof, utilized by the circuit court in this case may lead to an erroneous deprivation of a parent's fundamental rights. A factual-basis requirement ensures that the State has a basis for its allegation of unfitness. In addition, a factual-basis requirement makes certain that a parent's admis-

sion of unfitness is knowing and voluntary. Illinois courts have held that in a neglect proceeding, pursuant to the Juvenile Court Act of 1987 (705 ILCS 405/2—21 (West 1998)), circuit courts must state in writing the factual basis supporting the determination that a minor is abused, neglected, or dependent. *In re M.Z.*, 294 Ill. App. 3d 581, 599 (1998). The purpose of this statutory requirement is to set forth the grounds for termination of parental rights if no reasonable efforts were made by the parent to correct the grounds in the original adjudication of the child. *In re Z.Z.*, 312 Ill. App. 3d 800, 804 (2000). This requirement puts the parent on notice as to what is required of her in the future as to rehabilitation or progress to be made with regards to her children. It is clear that if sufficient facts must be presented to and found by the court in determining abuse, neglect, or dependence, then a factual-basis presentation must be required for a finding of unfitness as well.

Illinois courts have also held that admissions under the Juvenile Court Act must be voluntarily and intelligently made. *In re Beasley*, 66 Ill. 2d 385, 391 (1977); *In re Johnson*, 102 Ill. App. 3d 1005, 1012 (1981). The appellate court in *Johnson* held that for a parent's admission to be valid in an adjudicatory phase of a neglect proceeding it must be intelligently and voluntarily made. *Johnson*, 102 Ill. App. 3d at 1012-13. This knowing and voluntary requirement protects a parent from admitting to neglect or abuse when their conduct does not fall within the State's allegations.

Clearly, if an admission of neglect must be knowing and voluntary, then an admission of unfitness must also be knowing and voluntary. The factual basis allows the parent to hear the State describe the alleged facts relating to fitness and gives the parent an opportunity to challenge or correct any facts that are disputed. Without a factual basis, "there is a danger that a parent may

understand the State's alleged grounds of unfitness but may not realize that his or her conduct does not fall within those allegations." 313 Ill. App. 3d at 215. Thus, if a parent is not fully informed of the factual basis underlying the State's allegations, the risk is increased that her parental rights will be erroneously terminated because of an ill-advised admission of unfitness.

Finally, we must consider the governmental interest and any burdens a factual-basis requirement would place on that interest. Although the interests of the parent are important, the State also has a fundamental interest in the proceeding to terminate parental rights. The State's interest in parental rights termination proceedings is twofold: a *parens patriae* interest in preserving and promoting the child's welfare and a fiscal and administrative interest in reducing the cost and burden of such proceedings. *Santosky*, 455 U.S. at 766, 71 L. Ed. 2d at 615, 102 S. Ct. at 1401. Since the State is concerned with the welfare of the child, it shares the parent's interest in a correct and just decision at the fact-finding proceeding. *Santosky*, 455 U.S. at 766, 71 L. Ed. 2d at 615, 102 S. Ct. at 1401. A factual-basis requirement furthers the State's interest also.

Furthermore, a factual-basis requirement will not burden the State or the court. In the instant case, the State informed the court that respondent would admit that she was unfit. The circuit court accepted the admission after questioning respondent as to whether she understood her right to require the State to prove her unfit by clear and convincing evidence. Hearing the State's recitation of the facts supporting the underlying petition and determining that a factual basis exists is not unduly burdensome to either the court or the State. The State should have readily available sufficient facts since the State initiated the petition. A recitation of facts requires far less time than a contested evidentiary hearing and does not require witnesses to testify.

368

The application of the *Mathews* balancing test makes clear that due process requires a circuit court to determine whether a factual basis exists for an admission of parental unfitness before it accepts the admission. A factual-basis determination safeguards against an erroneous deprivation of respondent's fundamental right to parent her children. Further, such a requirement does not impose any increased burden on the State, but fosters just and accurate decisionmaking.

### CONCLUSION

For the foregoing reasons, we affirm the appellate court's judgment vacating respondent's admission of unfitness for lack of a factual-basis determination, reversing the order terminating respondent's parental rights as to M.H. and T.H., and remanding the cause for a new fitness hearing.

*Affirmed.*