## Josephine M. Linneman, Appellant, v. Francis P. Linneman, Appellee.

### Gen. No. 46,022.

Opinion filed December 15, 1953. Released for publication January 5, 1954.

ROBERT FRIEDLANDER, of Chicago, for appellant.

ALBERT E. JENNER, JR., PHILIP W. TONE, and WILLIAM B. DAVENPORT, all of Chicago, for appellee; JOHNSTON, THOMPSON, RAYMOND & MAYER, of Chicago, of counsel.

MR. JUSTICE ROBSON delivered the opinion of the court.

This is an appeal by plaintiff, Josephine M. Linneman, from an order dismissing her petition for a rule requiring defendant to show cause why he should not be held in contempt for failure to pay alimony. The plaintiff, who had divorced the defendant and remarried in Illinois, subsequently had her second marriage annulled in California. She predicated her petition for renewal of her alimony payments on the ground that the annulment of her second marriage revived defendant's responsibility to support her.

The first and vital issue to be decided is whether the California decree based on a provision of the California Code annulling the second Illinois marriage of plaintiff is a good and valid decree binding on defendant in Illinois.

It has been said that marriage is a civil contract to which there are three parties: the husband, the wife and the State, and it is regarded as a status based upon public necessity controlled by law for the benefit of society at large. *VanKoten v. VanKoten,* 323 Ill. 323, 326; *In re Estate of Young,* 319 Ill. App. 513. The law governing the validity of this contract is the

law of the State where it was made. *Reifschneider v. Reifschneider,* 241 Ill. 92, 96; *Lehmann v. Lehmann,* 225 Ill. App. 513, 523. Illustrative of this point is the case of *Ertel v. Ertel,* 313 Ill. App. 326, in which it was held that the statutes and construction thereof by the courts of review of Missouri, the place of the marriage, governed the question of the competency of the husband to enter into a marriage.

 Further, the Supreme Court of Colorado, in a well-considered opinion in the case of *Payne v. Payne,* 121 Colo. 212, enunciates this same principle. The court said on pages 217, 218:

"We appreciate the difference between actions for divorce and annulment . . . Our study persuades us that irrespective of whether the action is brought in the jurisdiction where the marriage ceremony was performed or in that where the parties, or one thereof, is domiciled at the time of the commencement of the annulment action, nevertheless, in such an action . . . the marriage contract is held to be valid or void, according to the statutes in force and effect in the jurisdiction where the same was entered into, and if, according to these statutes, it is found to be valid, it must be, with exception not necessary here to note, so considered in all other jurisdictions, notwithstanding the fact that under the statutes of another jurisdiction the marriage might be voidable or even void."

The Civil Code of California (sec. 63) provides:

"All marriages contracted without this State, which would be valid by the laws of the country in which the same were contracted, are valid in this State."

This provision of the Civil Code declares the general rule of conflicts of law governing the validity of the marriage, namely, that a marriage valid where celebrated is valid elsewhere. Restatement of Conflict of

Laws, secs. 121, 131, 132. This is also the law in Illinois. Construing this provision the courts of California have refused to annul marriages performed elsewhere which would have been voidable under the California Code. *McDonald v. McDonald,* 6 Cal.2d 457; *Vaughn v. Vaughn,* 62 Cal.App.2d 260.

In our case the record reveals that the plaintiff and the defendant, Francis P. Linneman, were divorced by a decree of the superior court of Cook county on July 2, 1947. By the terms of the decree the plaintiff was given custody of the minor son of the parties and provision was made for his support by defendant. The decree also provided for alimony payments to be made monthly to the plaintiff "until her death or *remarriage,* whichever event shall first occur."

On June 10, 1950, plaintiff was married to John Foster Corlett in Glencoe, Illinois. She had been and was then a resident of this State. Plaintiff and Corlett went on a honeymoon for a week and then returned to her home in Glencoe where they stayed for a week. On June 24, 1950, they left for San Francisco, California, where they made their residence.

Upon plaintiff's marriage to Corlett, defendant ceased making alimony payments to her. There was no protest from plaintiff. Plaintiff and her son and Corlett lived together in San Francisco from June until about the end of October or the first part of November in 1950. After the separation, plaintiff and her son continued to live in San Francisco. In July of 1951 plaintiff filed a complaint for annulment of her marriage with Corlett in the superior court in San Francisco on the ground of impotency pursuant to the following provision of the California Code, sec. 82:

"A marriage may be annulled for any of the following causes existing at the time of the marriage. . . .

"6. That either party was at the time of the marriage physically incapable of entering into the marriage state, and such incapacity continues and appears to be incurable."

Corlett's answer to the complaint was a general denial. The decree of annulment, which was entered July 27, 1951, was based on the perfunctory testimony of just the plaintiff. She was not cross-examined by Corlett's attorney who was present. Her statements as to the impotency of Corlett were not substantiated by competent medical testimony, which in our opinion would be required under the Illinois practice to prove impotency. The decree provided among other things:

". . . that at the time of the performance of said marriage ceremony, the defendant was physically incapable of entering into the marriage state or of consummating the said marriage by reason of incurable physical defects in that his parts of generation are frigid and impotent and such frigidity and impotence are wholly incurable by art or skill and that by reason of the law and findings aforesaid, the plaintiff is entitled to a judgment and decree declaring said marriage wholly null and void from the beginning.

"Now, therefore, it is hereby ordered, adjudged and decreed that the said marriage between the plaintiff and the defendant be, and the same is, hereby declared to be wholly null and void from the beginning and that said parties are, and each of them is, hereby freed from the obligations thereof."

After the entry of the decree of annulment, while plaintiff was still in California, she made a demand on defendant to resume his alimony payments. Demand was again made by plaintiff on defendant in August of 1951 when she returned to live in Glencoe, Illinois. Defendant refused to pay.

53

On these facts alone, based on the decisions heretofore discussed, we are of the opinion that unless the California decree of annulment was granted on grounds that were recognized in Illinois, where plaintiff had been a resident and where the marriage was performed, it would not be binding on the defendant.

There are in this case additional factors that weigh the scales of justice to a much greater degree in support of this conclusion. The pleadings show that the · decree for annulment was based on the provision of the California Code (sec. 82) which provides that impotency is a ground for annulment. No question was raised as to whether the law of Illinois or California should govern pursuant to sec. 63 of the California Code. Further, the California Civil Code (sec. 86) under which the annulment was granted provides:

"A judgment of nullity of marriage rendered is conclusive only as against the parties to the action and those claiming under them."

Under this provision in the case of *Price v. Price,* 24 Cal.App.2d 462, it was held in a similar situation as is here involved that a first husband could attack a decree purporting to annul his former wife's remarriage. To the same effect is *In re Gosnell's Estate,* 63 Cal. App.2d 38.

Defendant in the instant case was not a party to the complaint for annulment. He could attack the decree in California, contending that the law of Illinois where the marriage was performed should have governed in the annulment proceeding and not the law of California. (*McDonald v. McDonald,* 6 Cal.2d 457; *In re Gosnell's Estate,* 63 Cal.App.2d 38.) It then logically follows that any proceeding instituted upon this

54

decree in Illinois against defendant would be subject to the same defenses as it would be in California.

Is impotency a ground for annulment of a marriage in Illinois? In this State there are no statutory provisions for annulment of marriage. An examination of the various authorities (Rhodes, Annulment of Marriage 130–4 (1945); Vernier, 1 American Family Laws, sec. 50, p. 243; Arrington, Jurisdictional Aspects of Divorce, Annulment and Separate Maintenance, U. of Ill. L. Forum (1949) 547, 577, n. 135) list fraud, mistake, duress, mental incapacity, lack of parental consent as to marriage of minors, as grounds for annulment in Illinois. An examination of Illinois cases shows decrees of annulment granted for lack of mental capacity, *Pyott v. Pyott,* 191 Ill. 280; bigamy, *Hunt v. Hunt,* 252 Ill. App. 490, *Jardine v. Jardine,* 291 Ill. App. 152; perjured procurement of license, *Lyndon v. Lyndon,* 69 Ill. 43; and incest, *Whelan v. Whelan,* 346 Ill. App. 445.

There is no reported case where a decree of annulment was granted on the ground of impotency. There is, however, strong language to the contrary in the *dictum* of the case of *Reighley v. Continental Illinois National Bank,* 390 Ill. 242. The court in deciding the issues of the case states on page 248:

"The marriage was annulled in the Berlin court on the ground of impotency, which in Illinois is a ground for divorce and not annulment."

And again on page 252:

"It is undisputed that the facts justified a proceeding which would be classified as a divorce under the laws of Illinois. To say the marriage never existed is merely fiction, as the parties sustained a relation for ap-

55

proximately a year that in this State would be the status of marriage."

These statements are very persuasive.

 Plaintiff states that in the case of *People ex rel. Byrnes v. Retirement Board,* 272 Ill. App. 59, the decree of annulment under which the plaintiff sought to be restored to the pension roll was based on impotency. We do not consider this a precedent establishing impotency as ground for annulment. No attempt was made to challenge the validity of the decree in that case nor was it apparent that it was contested before the court in which it was granted.

 It is the general rule that in the absence of a statutory provision making impotency ground for annulment an action based on it will not prevail. Anonymous, 24 N. J. Eq. 19 (1873); *Leakim v. Leakim,* 3 Ont. W. N. 994, 21 Ont. W. R. 855, 2 D. L. R. 278 (1912); T—— v. B——, 15 Ont. L. R. 224, 10 Ont. W. R. 1030 (1907); see 3, Nelson, Divorce and Annulment, sec. 31.26 (2d ed. 1945).

 While impotency or physical inability to consummate a marriage has been a ground for divorce in Illinois since 1827 (Ill. Rev. Stat. 1827, p. 181; Ill. Rev. Stat. 1951, chap. 40, sec. 1 [Jones Ill. Stats. Ann. 109.169]), it has never been held to be a ground for annulment nor has any statute so provided. We, therefore, hold that impotency is not ground for annulment in Illinois. It follows that the decree of the California court granting plaintiff an annulment from her second husband on this ground is of no force or effect in this State and is not binding on the defendant.

Plaintiff cites *Sutton v. Leib,* 342 U. S. 402, as the principal case in support of her contention that the California decree should be recognized in Illinois. This

was an action based upon a divorce decree entered in Illinois, which provided for monthly installments of alimony until plaintiff remarried. After the decree plaintiff entered into a marriage in Nevada which was subsequently annulled in New York on the ground of bigamy. She filed a petition against the defendant to collect monthly installments of alimony for the period from the Nevada remarriage to her third presumably valid marriage in New York to a third man. The defendant pleaded that the Illinois alimony obligation was ended by the Nevada remarriage of plaintiff. Plaintiff contended that the New York annulment decree holding her Nevada marriage was void, obliterates the existence of this marriage and defendant is liable for alimony. Plaintiff's New York annulment was based on a decree of separate maintenance obtained by her second husband's wife, holding invalid a Nevada divorce that he had obtained just prior to his marriage to plaintiff. In both New York and Nevada bigamous marriages are void. The Supreme Court of the United States held that the New York decree of annulment was entitled to full faith and credit in Illinois.

An examination of the facts in the case before us discloses that there are many points of difference between it and *Sutton v. Leib.* Here plaintiff was a resident of Illinois. The marriage was performed in Illinois and subsequently plaintiff moved to California where the marriage was annulled. None of the distinguishing features of the California Code (secs. 63, 86) heretofore discussed were in effect in New York. In *Sutton v. Leib,* the bigamous marriage was void both in Nevada where the marriage was performed and in New York which annulled the marriage. We have decided that impotency, which is a ground for annulment in California, is not a ground for annulment in Illinois

where the marriage involved was performed. We conclude that the full faith and credit clause of the Federal Constitution as applied in *Sutton v. Leib* is not applicable in the instant case.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

SCHWARTZ, P. J., concurs.

TUOHY, J., specially concurring:

I agree with the conclusion reached but not with all that is said in the opinion.