CAROLYN A. WEST *et al.*, Petitioners and Cross-Appellees, v. GINGER WEST, Respondent and Cross-Appellant.

Fifth District   No. 5—97—0108

Opinion filed January 27, 1998.

Lance B. Freezeland, of Effingham, for cross-appellant.

No brief filed for cross-appellee.

JUSTICE MAAG delivered the opinion of the court:

This action was brought in April of 1993 by Carolyn and John West (grandparents) to obtain visitation rights with their grandson, Jacob Dean West. Jacob was born January 27, 1992. He is the biological son of Ginger West and Gregory West, Carolyn and John's deceased son. In June of 1993, when Jacob was approximately 17 months old, the grandparents were granted accelerating visitation privileges. The visitation began with brief visits every Saturday for six consecutive weeks in the presence of Ginger and culminated with alternating weekends, two weeks every summer, and December 26 and 27 yearly.

In June of 1995, Ginger filed a petition to modify the order of visitation, which was denied. In February of 1996, after various petitions were filed requesting Ginger to show cause why she should not be held in contempt for not complying with the June 1993 order of visitation, Ginger filed a petition to terminate the grandparental visitation privileges of Carolyn and John. On May 15, 1996, Ginger filed a notice of claim of unconstitutionality of the grandparental visitation statute (750 ILCS 5/607(b) (West 1996)). The trial court denied Ginger's motion to declare the statute unconstitutional. A notice of appeal was filed on this issue in December of 1996.

The relevant facts are as follows. Carolyn and John West are the paternal grandparents of Jacob West. Jacob is the biological son of Gregory and Ginger West. Gregory West, son of Carolyn and John, committed suicide in January of 1993.

In June of 1993, the circuit court of Jefferson County entered an order establishing visitation privileges for Carolyn and John with Jacob. The trial court made a finding that it was in the best interest of the child that such visitation should occur, but the court did not disclose the basis of its finding.

In July of 1995, Ginger filed a petition to modify the June 1993 order of visitation. In August of 1995, Ginger unilaterally terminated the scheduled visitations. After Ginger refused to comply with the 1993 visitation order, Carolyn and John filed a series of petitions seeking a rule to show cause why Ginger should not be held in contempt of court for her noncompliance. In February of 1996, Ginger filed a petition to terminate Carolyn's and John's visitation privileges. In May of 1996, Ginger filed a motion to declare the grandparental visitation statute unconstitutional. In June of 1996, a hearing was held on the various issues in this case.

At this hearing, there was testimony that soon after Jacob began visiting with John and Carolyn, he began exhibiting changes in his behavior, all of which coincided with the visits. He began to speak with a speech impediment caused by a disfigurement of his face, which involved him twisting his mouth downwards and to the right. He regressed in his toilet training. He experienced periods of hysterical crying and nightmares. He became fearful of his mother and exhibited instances of self-abuse, when he would hit or bite himself when he thought he had done something wrong.

In August of 1995, Ginger took Jacob for a psychiatric evaluation. During this evaluation, Ginger found out that Jacob had been told how his father died. She had not told him the details of his father's death because she felt he was too young to cope with them. Carolyn and John deny telling him the details. Jacob told his maternal grandmother that Carolyn and John told him Ginger did not love him. Carolyn and John also deny telling him this.

The doctors concluded that Jacob suffered from traumatic stress disorder that is related to some aspect of visitation with Carolyn and John. The doctors could not determine with certainty whether the disorder was caused by something that transpired during visitation or whether it was caused by the active conflict between his mother and grandparents. One doctor opined that the disorder was caused by the visitation schedule that was set up with his paternal grandparents when he was less than two years old, which caused him to be separated from his mother.

Based upon findings by the doctors and the changed behavior patterns of Jacob, the Illinois Department of Children and Family Services (DCFS) conducted an investigation. DCFS determined that there

was a risk of harm to the child from future contact with John. This was based on statements made by Jacob that he and his grandfather had a "bad secret" that he could not tell anyone and was based on other statements by Jacob which suggested he had been sexually abused. DCFS made a further finding of credible evidence of child abuse and/or neglect. These findings, combined with the findings of the doctors during the psychiatric evaluations, led Ginger to stop the visits between Jacob and his grandparents and to seek the modification and later termination of Carolyn's and John's visitation privileges.

The trial court denied Ginger's motion challenging the constitutionality of the grandparental visitation statute. The trial court chose to modify the visitation privileges of Carolyn and John to supervised visitation to take place one Sunday per month for three hours in the home of Jacob's maternal grandmother, instead of terminating visitation. Carolyn and John appealed the restriction of visitation. Ginger cross-appealed the ruling of the trial court denying her motion to find the grandparental visitation statute unconstitutional.

On April 24, 1997, John West moved for a voluntary dismissal of the grandparents' appeal, Carolyn West then being deceased. John's motion was granted. Ginger proceeded with her cross-appeal.

The issue presented for review on appeal is whether section 607(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/607(b) (West 1996)), insofar as it pertains to grandparental visitation privileges, is unconstitutional as violative of the fundamental liberty rights of parents to the care and custody of their children, which are guaranteed to them by the fourteenth amendment to the United States Constitution and article I, section 2, of the Constitution of the State of Illinois.

■ We begin our analysis of this issue with the presumption that the challenged provision of the visitation statute is constitutional. See *Tully v. Edgar*, 171 Ill. 2d 297, 304, 664 N.E.2d 43, 47 (1996). The court has a duty to construe enactments so as to sustain their constitutionality and validity, if reasonably possible. *People v. Warren*, 173 Ill. 2d 348, 355, 671 N.E.2d 700, 705 (1996). Keeping these principles in mind, we now proceed with our analysis.

■ Ginger begins her argument with a discussion of the long-recognized constitutionally protected interest of parents to raise their children without undue state influence. See *Meyer v. Nebraska*, 262 U.S. 390, 399, 67 L. Ed. 1042, 1045, 43 S. Ct. 625, 626 (1923); *Pierce v. Society of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534-35, 69 L. Ed. 1070, 1078, 45 S. Ct. 571, 573 (1925); *Prince v. Massachusetts*, 321 U.S. 158, 166, 88 L. Ed. 645, 652, 64 S.

Ct. 438, 442 (1944); *Wisconsin v. Yoder*, 406 U.S. 205, 235, 32 L. Ed. 2d 15, 36, 92 S. Ct. 1526, 1543 (1972); *Santosky v. Kramer*, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 606, 102 S. Ct. 1388, 1394 (1982). However, this constitutionally protected parental interest is not wholly without limit or beyond regulation. *Prince v. Massachusetts*, 321 U.S. 158, 166, 88 L. Ed. 645, 652, 64 S. Ct. 438, 442 (1944). "[T]he state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare." *Prince*, 321 U.S. at 167, 88 L. Ed. at 653, 64 S. Ct. at 442. In fact, the entire familial relationship involves the state.

When two people decide to get married, they are required to first procure a license from the state. If they have children of this marriage, they are required by the state to submit their children to certain things, such as school attendance and vaccinations. Furthermore, if at some time in the future the couple decides the marriage is not working, they must petition the state for a divorce. Marriage is a three-party contract between the man, the woman, and the state. *Linneman v. Linneman*, 1 Ill. App. 2d 48, 50, 116 N.E.2d 182, 183 (1953), citing *VanKoten v. VanKoten*, 323 Ill. 323, 326, 154 N.E. 146 (1926). The state represents the public interest in the institution of marriage. *Linneman*, 1 Ill. App. 2d at 50, 116 N.E.2d at 183. This public interest is what allows the state to intervene in certain situations to protect the interests of members of the family. The state is like a silent partner in the family who is not active in the everyday running of the family but becomes active and exercises its power and authority only when necessary to protect some important interest of family life. Taking all of this into consideration, the question no longer is whether the state has an interest or place in disputes such as the one at bar, but it becomes a question of timing and necessity. Has the state intervened too early or perhaps intervened where no intervention was warranted? This question then directs our discussion to an analysis of the provision of the Act that allows the challenged state intervention (750 ILCS 5/607(b) (West 1996)).

Before beginning our analysis, we must note that the appeal of the ruling in this case is based solely on constitutional grounds.

■ The grandparental visitation provision states:

> "(b)(1) The court may grant reasonable visitation privileges to a grandparent, great-grandparent, or sibling of any minor child upon petition to the court by the grandparents or great-grandparents or on behalf of the sibling, with notice to the parties required to be notified under Section 601 of this Act, if the court determines that it is in the best interests and welfare of the child, and may issue any necessary orders to enforce such visitation

privileges. Except as provided in paragraph (2) of this subsection (b), a petition for visitation privileges may be filed under this subsection (b) whether or not a petition pursuant to this Act has been previously filed or is currently pending if one or more of the following circumstances exist:

(A) the parents are not currently cohabiting on a permanent or an indefinite basis;

(B) one of the parents has been absent from the marital abode for more than one month without the spouse knowing his or her whereabouts;

(C) one of the parents is deceased;

(D) one of the parents joins in the petition with the grandparents, great-grandparents, or sibling; or

(E) a sibling is in State custody.

\* \* \*

(3) When one parent is deceased, the surviving parent shall not interfere with the visitation rights of the grandparents." 750 ILCS 5/607(b) (West 1996).

This provision has undergone many amendments since its introduction into Illinois statutory law. See E. Burns, *Grandparent Visitation Rights: Is it Time for the Pendulum to Fall?*, 25 Fam. L.Q. 59, 64 (1991). A close look at the history of this provision provides some insight into what the legislature was trying to achieve in enacting it.

The provision was first construed as recognizing a grandparent's right to seek visitation after the parents divorced. 25 Fam. L.Q. at 64, citing Ill. Rev. Stat. 1981, ch. 40, par. 607(b). Less than one year after the provision's enactment, it was amended to provide grandparents a right to seek visitation privileges if one of the child's parents died. Ill. Rev. Stat., 1982 Supp., ch. 40, par. 607(b); see 25 Fam. L.Q. at 64-65. In 1985, the provision was again amended to allow for visitation privileges when the child had been adopted by the surviving parent or the custodial parent's spouse. Ill. Rev. Stat. 1985, ch. 40, par. 607(b); see 25 Fam. L.Q. at 65. In 1989, the provision was again amended. Language in this amendment allowed the grandparents to seek visitation privileges regardless of whether the family was still intact. Ill. Rev. Stat. 1989, ch. 40, par. 607(b); see 25 Fam. L.Q. at 65. That language was revised less than one year after becoming law. Pub. Act 86—1452, eff. July 1, 1991; Ill. Rev. Stat., 1990 Supp., ch. 40, par. 607(b); see 25 Fam. L.Q. at 65.

The statute presently provides that a grandparent is permitted under limited circumstances to seek visitation privileges even if the parents are not divorced. These circumstances include the following: (1) when parents are not living together on a permanent or indefinite

basis, (2) when one of the parents has been missing for more than one month without the other spouse knowing his or her whereabouts, or (3) when one of the parents joins in the petition with the grandparents. 750 ILCS 5/607(b)(1)(A), (b)(1)(B), (b)(1)(D) (West 1996). For the most part, these circumstances parallel the common law "special circumstances" recognized by Illinois case law that predated the statute.

A review of the following cases is instructive. In *Solomon v. Solomon*, 319 Ill. App. 618, 49 N.E.2d 807 (1943), after a divorce, the mother was granted custody of the child, and the father was given visitation with the child at reasonable times. The father was later inducted into the armed forces and was unable to exercise his visitation. He joined in a petition with his parents so that they could have visitation with the child. The grandparents were given visitation privileges with the child. *Solomon*, 319 Ill. App. at 619, 49 N.E.2d at 808. The *Solomon* case parallels section 607(b)(1)(D) of the Act (750 ILCS 5/607(b)(1)(D) (West 1996)).

In *Boyles v. Boyles*, 14 Ill. App. 3d 602, 603, 302 N.E.2d 199, 200 (1973), after the death of their daughter, who had been granted custody of the child in a divorce proceeding, the maternal grandparents sought visitation privileges. Visitation was ordered by the court with the consent of the father, who later refused to comply with the order. *Boyles*, 14 Ill. App. 3d at 603, 302 N.E.2d at 200. On appeal, the court held that the father was required to comply with the court order because the child had visited with the grandparents every day prior to the mother's death and the father had agreed to the visitation in the court order. *Boyles*, 14 Ill. App. 3d at 604, 302 N.E.2d at 201. "We believe where a parent has died, the continuation of the relationship between child and grandparents, which may be promoted by visitation, may be a positive benefit affecting the best interest of the child." *Boyles*, 14 Ill. App. 3d at 604, 302 N.E.2d at 201. This rule announced in the *Boyles* case coincides with both section 607(b)(1)(C) and section 607(b)(3) (750 ILCS 5/607(b)(1)(C), (b)(3) (West 1996)).

We do not believe that the legislature was attempting to change the common law as announced in these decisions. "A statute will be construed as changing common law only to the extent that the terms thereof warrant, or as necessarily implied from what is expressed." *Hawkins v. Hawkins*, 102 Ill. App. 3d 1037, 1039, 430 N.E.2d 652, 654 (1981), citing *Sternberg Dredging Co. v. Estate of Sternberg*, 10 Ill. 2d 328, 140 N.E.2d 125 (1957); *Acme Fireworks Corp v. Bibb*, 6 Ill. 2d 112, 126 N.E.2d 688 (1955); *People v. Monoson*, 75 Ill. App. 3d 1, 393 N.E.2d 1239 (1979). "Repeal of the common law by implication is not favored." *Hawkins*, 102 Ill. App. 3d at 1039, 430 N.E.2d at 654.

Rather, we believe that the legislature was codifying the common law and simultaneously expanding grandparental visitation.

The 1989 amendment allowed grandparents to seek visitation regardless of the status of the nuclear family. In other words, under the provision as it existed for that short time in 1989 and 1990, a grandparent could seek visitation with a child even when both of his or her parents were alive and cohabiting. That amendment's short-lived existence supports the principle that the state will not seek to intervene in an undisrupted family. This deference allows both parents to make joint decisions acting in the best interest of the family as a whole. "[This amendment] comes as a 'promise of relief to some who feel the state has overstepped its purview by meddling with what they call a sacred right for parents: to decide who[m] their children should have contact with.' " (Emphasis omitted.) 25 Fam. L.Q. at 75, quoting Kendall, *Grandparents' Rights Challenged*, Chi. Trib., June 4, 1990, § 2, at 1. Only in the case of a disrupted family does the state seek to intervene, and only then to protect the interests of those who cannot protect their own interests. This is the same way the issue of grandparental visitation was handled in the courts before the enactment of the visitation statute.

This disparate treatment of married parents versus divorced or widowed parents could arguably give rise to an equal protection argument. This can be quickly dispelled.

In *Kujawinski v. Kujawinski*, 71 Ill. 2d 563, 568-69, 376 N.E.2d 1382, 1384 (1978), Mr. Kujawinski was a party to a pending divorce action. He challenged the constitutionality of certain provisions of the Act. Specifically, he challenged the provisions that allowed the court to order a divorced parent to provide support to children greater than that required by married parents. *Kujawinski*, 71 Ill. 2d at 569, 376 N.E.2d at 1385. Our supreme court held that there is a legitimate basis for distinguishing between a disrupted family and an intact family because in a disrupted family, especially one disrupted by divorce, the parents may not be as willing, or able because of mixed feelings for their ex-spouse, to consider the best interests of their children. *Kujawinski*, 71 Ill. 2d at 580, 376 N.E.2d at 1390. "The legislature is not restrained from remedying a particular problem merely because that problem exists for one group of individuals and not for another." *People v. Warren*, 173 Ill. 2d 348, 365, 671 N.E.2d 700, 709 (1996). Therefore, it is not a violation of divorced or widowed parents' equal protection rights for the State to allow grandparents to seek visitation privileges, because the problems that arise after the death of one parent or divorce are not usually present in an intact family.

■ "In assessing the best interest of the child in matters of [visitation], the court must consider 'all matters that have a bearing upon the welfare of the child.'" *In re Violetta B.*, 210 Ill. App. 3d 521, 534, 568 N.E.2d 1345, 1353 (1991), quoting *People ex rel. Edwards v. Livingston*, 42 Ill. 2d 201, 209, 247 N.E.2d 417, 421 (1969). Among the appropriate matters to consider are: (1) the nature and length of the child's relationship with persons seeking visitation and (2) the effect of visitation on the emotional and psychological well-being of the child. *Violetta B.*, 210 Ill. App. 3d at 534, 568 N.E.2d at 1353.

■ We realize that the challenged statute and the common law it codifies allow the state to act upon a constitutionally recognized fundamental right of parents. Where a statute infringes upon a fundamental constitutional right, that statute may be upheld only if a compelling state interest exists to achieve a stated goal. *Tully v. Edgar*, 171 Ill. 2d 297, 304-05, 664 N.E.2d 43, 47 (1996). The least restrictive means necessary must be used to attain the goal. *Tully*, 171 Ill. 2d at 305, 664 N.E.2d at 47. We find that the state has a compelling interest in maintaining and safeguarding an established grandparent-grandchild relationship where it has been proven by the grandparent that it is in the best interest of the child for the relationship to continue.

We further find that this statute is narrowly tailored to achieve the goal of maintaining and promoting a grandparent-grandchild relationship. First, it does not give grandparents an automatic right to visitation. The visitation statute states that "[t]he court *may* grant" (emphasis added) a grandparent's right to visitation and states that a noncustodial parent is "*entitled* to reasonable visitation" (emphasis added). 750 ILCS 5/607(b), (a) (West 1996). This is an important distinction. It shows that the legislature was conscious of parents' superior right to the custody and care of their children. Furthermore, the provision does not allow the grandparents to seek court-ordered visitation while the nuclear family is intact.

For the foregoing reasons, we find that the grandparental visitation provision of section 607(b) is constitutional under both the fourteenth amendment to the United States Constitution and under article I, section 2, of the Illinois Constitution of 1970. U.S. Const. amend. XIV; Ill. Const. 1970, art I, § 2. We were asked to address only the constitutional issue. We were not asked to review the circuit court's factual determination. Therefore, the order of the circuit court is affirmed.

Affirmed.

WELCH, P.J., and KUEHN, J., concur.