Docket No. 103946.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

CINDY FLYNN, Appellee, v. ALICE HENKEL, Appellant.

*Opinion filed November 29, 2007.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, Garman, and Burke concurred in the judgment and opinion.

## OPINION

Alice Henkel is a single mother raising a minor child, E.H., who was born on May 27, 2003. Cory Flynn is the father of E.H. Alice and Cory were never married and never lived together. Alice and E.H. live with E.H.'s maternal grandparents. Cindy Flynn is Cory's mother and the paternal grandmother of E.H.

Cindy filed a petition in the circuit court of Lee County for grandparent visitation against Alice in December 2005 under section 607(a–5) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/607(a–5) (West 2006)), commonly called the grandparents visitation statute. The court held a hearing on the petition on April 21, 2006. Following the hearing, the court allowed the visitation, providing for three hours of unsupervised visitation on the second Saturday of each month with certain restrictions. Alice

appealed and the appellate court affirmed. 369 Ill. App. 3d 328. We granted leave to appeal (210 Ill. 2d R. 315) and reverse the appellate court and the trial court for the reasons that follow.

BACKGROUND

The hearing on Cindy's petition was held on April 21, 2006, pursuant to the grandparent visitation statute, which in pertinent part provides:

> "(a–5)(1) Except as otherwise provided in this subsection (a–5), any grandparent, great-grandparent, or sibling may file a petition for visitation rights to a minor child if there is an unreasonable denial of visitation by a parent and at least one of the following conditions exists:
>
> * * *
>
> (E) the child is born out of wedlock, the parents are not living together, and the petitioner is a paternal grandparent, great-grandparent, or sibling, and the paternity has been established by a court of competent jurisdiction.
>
> ***
>
> (3) In making a determination under this subsection (a–5), there is a rebuttable presumption that a fit parent's actions and decisions regarding grandparent, great-grandparent, or sibling visitation are not harmful to the child's mental, physical, or emotional health. The burden is on the party filing a petition under this Section to prove that the parent's actions and decisions regarding visitation times are harmful to the child's mental, physical, or emotional health." 750 ILCS 5/607(a–5) (West 2006).

All the evidence in this case was presented through the testimony of Alice, Cindy and E.H.'s maternal grandmother at that hearing. Cindy first learned of E.H.'s birth one month after he was born. She and her husband visited E.H. at the home of E.H.'s maternal grandparents that same night. The parties agreed to visit once a week and, after a few weeks, arranged to visit twice a month for two hours. Although the record is not clear as to when Cory went to prison or if he was in prison at the time of E.H.'s birth, he was released from

prison in July of 2003, at which time Alice would not allow Cory to see E.H. Alice told Cindy that she and her husband could see E.H., if they kept Cory out of E.H.'s life. Cindy and her husband abided by this condition. Cory later filed a petition to obtain visitation with his son. Cindy testified that "when Alice got her papers from the court, she called me in a rage. She cussed me out and told me that I lost my visitation with [E.H.]" Cory was later granted supervised visitation at Sinnissippi, a community-based behavioral health-care center. Cindy testified that the visitation order stated that Cindy could not see E.H. without Cory. (The petition, order and report of proceedings in Cory's visitation proceeding are not part of the record in this case.) Eventually, Cory and Alice agreed to have the supervised visits at Alice's house. Cindy attended the visitations at Sinnisssippi, but she did not attend the visitations at Alice's house.

Cory left for California in September of 2005. Cindy contacted Alice and requested visitation with E.H. without Cory. Alice refused this request and Cindy filed her petition for visitation in December 2005. There was no visitation between Cindy and E.H. from May 2005 until Cindy filed her petition. After the petition for visitation was filed, Alice and Cindy agreed to a trial visitation period that lasted for two visits each in January and in February 2006. When no further agreement could be reached, the visitation petition was set for hearing and, as previously noted, was heard on April 21, 2006. No motion attacking the sufficiency of the allegations in the petition and no answer to the petition was ever filed by Alice.

At the close of the evidence and arguments, the trial court stated:

"Okay. Based on the testimony presented the Court finds that the petitioner has met her burden. The harm in this case is not something that you can put in the sense of a direct emotional harm. It's a direct denial of an opportunity that every grandparent according to this statute is entitled to."

The trial court then specifically addressed each of the statutory factors enumerated in sections 607(a–5)(4)(A) through (a–5)(4)(J) in deciding in favor of visitation.

In its written order granting visitation, the trial court did not make any specific findings as to how Cindy had overcome the statutory

presumption that Alice's decisions regarding grandparent visitation were not harmful to E.H.'s mental, physical, or emotional health.

Alice argued in the appellate court that Cindy failed to prove that denying grandparent visitation was harmful to E.H.'s mental, physical, or emotional health, as required by section 607(a–5)(3) of the Act. The appellate court rejected this argument and stated:

> "The harm that E.H. would suffer if there were no visitation can be inferred from the evidence. As the trial court stated, it 'is not something that you can put in the sense of a direct emotional harm.' However, Cindy's love for E.H. is manifest in the record. She tried to become involved with Alice even before E.H. was born and sent items for the baby. She came to visit E.H. the very night that she learned that he had been born. As Cindy said, 'I just want to be part of [E.H's] life. He deserves it and I deserve it.' *If Cindy were denied visitation, E.H. would be harmed by never knowing a grandparent who loved him and who did not undermine the child's relationship with his mother*. There was no evidence that the prior visitation interfered with Alice's relationship with E.H., and the evidence showed that Cindy would abide by any restrictions that the court placed on future visitation . We can find no error in the trial court's finding that Alice's denial of visitation was harmful to E.H.'s mental, physical, or emotional health ***." (Emphasis added.) 369 Ill. App. 3d at 335.

The dissenting justice stated that "if the harm referred to in section 607(a–5)(3) includes the general proposition that any child is harmed by his parent's refusal to allow visitation with a grandparent who loves him and does not undermine the child's relationship with his parent, the breadth of the statute would conflict with the holdings of *Wickham*." 369 Ill. App. 3d at 357 (Kapala, J., dissenting), citing *Wickham v. Byrne*, 199 Ill. 2d 309, 317 (2002). He would find that Cindy failed to show any harm to E.H. by the denial of her visitation and she therefore failed to fulfill the requirements of section 607(a–5)(3).

-4-

## STANDARD OF REVIEW

The presumption established in section 607(a–5)(3) that a fit parent's denial of a grandparent's visitation is not harmful to the child's mental, physical, or emotional health is the embodiment of the fundamental right of parents to make decisions concerning the care, custody, and control of their children which is protected by the fourteenth amendment. See *Wickham v. Byrne*, 199 Ill. 2d 309 (2002). Section 607(a–5)(3) places the burden on the party filing the visitation petition to prove that the parent's actions and decisions regarding visitation times are harmful to the child's mental, physical, or emotional health. A trial court's determination that a fit parent's decision regarding whether grandparent visitation is or is not harmful to the child's mental, physical, or emotional health will not be disturbed on review unless it is contrary to the manifest weight of the evidence. See *In re Gwynne P. v. Detra W.*, 215 Ill. 2d 340, 354 (2005).

## ANALYSIS

Alice argues, in this court as she did in the appellate court, that Cindy failed to prove that denying visitation was harmful to E.H.'s mental, physical or emotional health, as required by section 607(a–5)(3). Section 607(a–5)(3) was added after we held the former grandparent visitation statute (see 750 ILCS 5/607(b)(1) (West 2000)) unconstitutional in *Wickham* and is best understood in light of the holdings therein. The former grandparent visitation statute provided in pertinent part:

> "The court may grant reasonable visitation privileges to a grandparent, great-grandparent, or sibling of any minor child upon petition to the court by the grandparents or great-grandparents or on behalf of the sibling, *** if the court determines that it is in the best interests and welfare of the child, and may issue any necessary orders to enforce such visitation privileges." 750 ILCS 5/607(b)(1) (West 2000).

In determining the constitutionality of this former statute, we stated, "We begin with the *presumption* that a fit parent's decision to deny or limit visitation is in the child's best interests." (Emphasis in original.) *Wickham*, 199 Ill. 2d at 318 (citing *Troxel v. Granville*, 530

U.S. 57, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000), *Parham v. J.R.*, 442 U.S. 584, 61 L. Ed. 2d 101, 99 S. Ct. 2493 (1979), and *Lulay v. Lulay*, 193 Ill. 2d 455 (2000)). We then found the former grandparent visitation statute unconstitutional because it gave no special weight to this presumption. We stated:

> "Section 607(b)(1) permits grandparents, great-grandparents, or the sibling of any minor child visitation if 'the court determines that it is in the best interests and welfare of the child.' 750 ILCS 5/607(b)(1) (West 2000). Like the statute in *Troxel*, section 607(b)(1), in every case, places the parent on equal footing with the party seeking visitation rights. Further, like the statute in *Troxel*, section 607(b)(1) directly contravenes the traditional presumption that parents are fit and act in the best interests of their children. *** Section 607(b)(1) exposes the decision of a fit parent to the unfettered value judgment of a judge and the intrusive micromanaging of the state." *Wickham*, 199 Ill. 2d at 320.

After the former grandparent statute was held unconstitutional in *Wickham*, the legislature enacted section 607(a–5)(3), establishing "a rebuttable presumption that a fit parent's actions and decisions regarding grandparent *** visitation are not harmful to the child's mental, physical, or emotional health" and placing the burden on the grandparent "to prove that the parent's actions and decisions regarding visitation times are harmful to the child's mental, physical, or emotional health." 750 ILCS 5/607(a–5)(3) (West 2006).

Alice argues that the trial court and the appellate court each applied the "best interests of the child" standard of the former grandparent visitation statute in finding that Cindy had overcome the presumption, and carried the burden, established in section 607(a–5)(3). She states that the trial and appellate courts engaged in a balancing of facts "for" and "against" grandparent visitation based on the assumption that grandparent-grandchild relationships will almost always benefit the child. It is argued that under this assumption, since a child can only benefit from a relationship with a loving grandparent then, of necessity, the denial of that relationship constitutes harm.

In *Lulay v. Lulay*, 193 Ill. 2d 455 (2000), this court held that section 607(b)(1) of the former grandparent visitation statute (750

ILCS 5/607(b)(1) (West 2000)) was unconstitutional as applied to the facts of that case. In determining whether the statute met the strict scrutiny test, this court considered the generalizations, advanced by the parties, as to whether grandparent visitation is beneficial to the children. *Lulay*, 193 Ill. 2d at 476-78. The Attorney General of Illinois was permitted to intervene in that case to defend the constitutionality of section 607(b)(1).

This court first noted: "The State cites the decision in *West v. West*, 294 Ill. App. 3d 356, 364 (1998), which, in upholding the facial validity of section 607(b)(1), reasoned that the state 'has a compelling interest in maintaining and safeguarding an established grandparent-grandchild relationship where it has been proven by the grandparent that it is in the best interest of the child for the relationship to continue." *Lulay*, 193 Ill. 2d at 476. The State cited legislative history of the former grandparent visitation statute and the court quoted from several state Representatives that the purpose of the legislation was the opportunity of continuing a relationship between grandparents and grandchildren in dissolution cases. *Lulay*, 193 Ill. 2d at 476-77. This court next stated: "In contrast, the parents cite decisions from other jurisdictions that question the premise that grandparent visitation is always beneficial to the child." *Lulay*, 193 Ill. 2d at 477. In conclusion, this court said, "Generalizations about whether grandparent visitation is beneficial to the children are not determinative of this case." *Lulay*, 193 Ill. 2d at 478.

Although Cindy testified that E.H. loves her and that he hugs her and holds her when he sees her, she did not present any evidence to show that denial of visitation with her would result in harm to E.H.'s mental, physical, or emotional health. The only evidence pertaining to harm E.H. would experience from the denial of visitation with his grandmother came from Alice, who was asked, "Do you believe it would be harmful for E.H. not to see Cindy Flynn and visit with her?" and she answered "No."

It is clear that the trial court, in its oral pronouncement at the conclusion of the April 21 hearing and contrary to the appellate court's interpretation of that pronouncement, found there was no "direct emotional harm" to E.H. in Alice's decision to deny visitation to Cindy. Rather, the trial court clearly stated that the harm is "a direct denial of an opportunity that every grandparent according to this

statute is entitled to." Neither denial of an opportunity for grandparent visitation, as the trial court found, nor a child "never knowing a grandparent who loved him and who did not undermine the child's relationship with his mother," as the appellate court held, is "harm" that will rebut the presumption stated in section 607(a–5)(3) that a fit parent's denial of a grandparent's visitation is not harmful to the child's mental, physical, or emotional health. *Cf. Lulay v. Lulay*, 293 Ill. 2d at 476-78.

Based on the record before us we find that the trial court's unsupported oral pronouncement that petitioner had met her burden of proof in overcoming the statutory presumption that Alice's decisions denying grandparent visitation was not harmful to E.H.'s mental, physical or emotional health is against the manifest weight of the evidence.

## CONCLUSION

For the reasons set forth above, the judgments of the appellate court and the trial court are reversed.

*Reversed.*