NOTICE
Decision filed 11/08/19. The
text of this decision may be
changed or corrected prior to
the filing of a Peti ion for
Rehearing or the disposition of
the same.

2019 IL App (5th) 180559-U

NO. 5-18-0559

IN THE

NOTICE
This order was filed under
Supreme Court Rule 23 and
may not be cited as precedent
by any party except in the
limited circumstances allowed
under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| ROBERT H. and MADONNA H., | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioners, | ) | Madison County. |
| | ) | |
| v. | ) | No. 16-F-111 |
| | ) | |
| ANDREA ABBOTT H., | ) | |
| | ) | |
| Respondent-Appellee | ) | Honorable |
| | ) | Martin J. Mengarelli, |
| (Robert H., Petitioner-Appellant). | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Presiding Justice Overstreet and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's denial of the grandfather's petition for visitation with his deceased son's minor children is affirmed where the court's finding that the mother was not unreasonable in denying him unsupervised visitation was not against the manifest weight of the evidence and where the grandfather failed to rebut the presumption that the mother's decision regarding visitation did not result in harm to the minor children's physical, mental, or emotional health.  Also, as we find that a reasonable, prudent attorney would not have pursued an appeal in this case, we award the mother sanctions under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) and remand the cause to the trial court for a determination on the amount of sanctions.

¶ 2    The petitioner, Robert H., the paternal grandfather of minor children Audrey H. and

Annalynn H., appeals the order entered by the circuit court of Madison County denying his

1

petition for grandparent visitation pursuant to section 602.9 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/602.9 (West 2016)). On appeal, the petitioner argues that the trial court's order was against the manifest weight of the evidence. For the following reasons, we affirm and remand the matter to the trial court for a determination on the amount of sanctions that should be awarded to the respondent.

¶ 3                                    I. BACKGROUND

¶ 4      The respondent, Andrea H., is the biological mother of Audrey H., born November 10, 2009, and Annalynn H., born September 4, 2013. Sean H., who was married to Andrea, was the children's biological father. The petitioner was his father. In 2014, a petition to dissolve the marriage of the respondent and Sean was filed. On September 22, 2015, during the pendency of the dissolution proceedings, Sean passed away. On March 4, 2016, the petitioner and his wife, Madonna H.,[1] filed a petition seeking visitation with their grandchildren, pursuant to section 602.9(c)(1) of the Act (*id.* § 602.9(c)(1)), commonly referred to as the grandparent visitation statute. The petition asserted that the respondent had unreasonably denied them visitation with the minor children, which had caused the children undue mental and emotional harm. The petition further asserted that it was in the children's best interests that the paternal grandparents be awarded reasonable visitation and electronic communication.

¶ 5      On June 27, 2016, the trial court held a hearing on the grandparents' petition for temporary relief (the petition is not included as part of the record on appeal). It appears

---

[1]During the pendency of these proceedings in the trial court, Madonna passed away. Thus, although Madonna was initially named as a petitioner in this case, Robert is the only petitioner involved in the appeal.

that the hearing went longer than expected, but a second day was never scheduled, so the temporary relief hearing was never concluded. The petitioner testified as follows at this hearing. He testified that he was a public-school teacher for 32 years but that he was currently retired. After Sean and the respondent separated, but before Sean died, the petitioner saw his grandchildren every Wednesday night. He also saw them occasionally on holidays and during other family events. While Sean and the respondent were together, the petitioner typically only saw the children during family functions or holidays, and these visits usually occurred at the children's house. He never had overnight visits with the children. He desired to continue his relationship with his grandchildren, but since his son died, he had not been given visitation with the children without the respondent being present. However, he acknowledged that, after Sean died, the respondent had arranged for him to have contact with the children as long as she was there.

¶ 6    On June 22, 2018, the trial court held a hearing on the petitioner's petition for grandparent visitation. The following testimony was presented. The respondent testified that Audrey was eight years old and that Annalynn was four years old. Between December 1, 2016, and June 22, 2018, the children had seen their grandfather one time when they all went to lunch in the summer of 2017. The respondent explained that she had not heard from the petitioner since that lunch, and she never offered him additional time with the children. She also explained that, although she was present at that lunch, she sat at a different table with her boyfriend. She testified that Audrey suffered from allergies and asthma, and Annalynn suffered from passing-out syndrome. Although she believed that it was important for the children to have a relationship with their grandparents, she did not

3

want the children to be unsupervised with the petitioner. She explained that she was concerned about his health and his ability to take care of Audrey if she experienced an asthma attack, or Annalynn if she experienced a fainting spell while in his care. She further explained that while Annalynn was being potty trained, she wanted to be the person with Annalynn in the bathroom. At the time of the hearing, Annalynn was almost potty trained. She also explained that the petitioner had dogs in his house, and Audrey was allergic to long-haired dogs. She acknowledged that there were no restrictions on her parents seeing the children even though they have one dog and her father, who was 75 years old, has a pacemaker.

¶ 7     The respondent also acknowledged that the children went to daycare while she was at work, and Audrey has had one fainting event at daycare. Even if the petitioner became certified as a daycare provider, she still would not want him to have unsupervised visitation with the children. She had babysitters watch the children when needed, and she trained them on how to deal with the children's health issues.

¶ 8     During her marriage with Sean, even though they all lived in the same town, the paternal grandparents never babysat the children unsupervised, and the children never stayed overnight with them. She explained that this was a joint decision made by her and Sean. The paternal grandparents would see the children no more than eight times per year. After her youngest daughter was born, there was less contact between the grandparents and the children. However, the respondent explained that she never kept the children from seeing them.

4

¶ 9 After Sean died, the respondent took the children to their grandparents' house every week for two months. She explained that this was more time with the children than they had before Sean's death. She eventually stopped the visitations because Audrey was having difficulty after her father's death, and her counselor realized that the visitations were hard on Audrey because her father's death "was kind of being thrown into her face with pictures and memories and things" at her grandparents' house. The counselor advised that the children have visitation with the grandparents once per month in a public place so that it would be easier on Audrey. Between March 2016 and November 2016, the respondent allowed the petitioner to see the children on approximately three occasions; the visits occurred in a public place. The respondent explained that it was her intention to allow the petitioner visitations with the children; she just did not want a court to dictate the terms of that visitation. She believed that it was reasonable for grandparents who were not regularly involved in their grandchildren's lives to see their grandchildren for 12 hours per year. She did not know how much contact the children had with their paternal grandparents while her divorce from Sean was pending.

¶ 10 The respondent acknowledged that the children's paternal grandparents were named as beneficiaries on Sean's life insurance policy, and she discovered this approximately two weeks after his death. She acknowledged that she was disappointed for her children's sake that she was not named as a beneficiary on the life insurance policy as she wanted the money to be invested for the children's college. However, she did not prevent the grandparents from seeing her children after she found out about the insurance.

5

¶ 11 The respondent further acknowledged that Audrey was no longer in counseling and that both children were doing well, receiving good grades, and were involved in extracurricular activities. She explained that she would be fine with the petitioner having once-a-month visitation with the children if she was present.

¶ 12 Michelle H., Sean H.'s sister-in-law, testified that she would like to see the children more, that she had not seen them since Easter, and that she saw the children about two to three times per week when Sean was alive and going through his divorce with the respondent but that the frequency of the contact changed once he died. She explained that it was very difficult to see the children before Sean and the respondent separated because, during the holidays, Sean and the respondent always went to the paternal grandparents' house at different times from the rest of the family. She acknowledged that she never babysat for the children while Sean was alive.

¶ 13 Kevin H., Sean's brother, testified that, prior to Sean and the respondent separating, he only saw the children occasionally, when Sean brought them to his house or his parents' house. After they separated, he saw the children more frequently. After Sean's death, he contacted the respondent a couple of times to set up a lunch with the children; she was agreeable to scheduling a lunch the first time, but the second time, she did not respond to his request. He also testified about an occasion where he approached the children at a parade, and the respondent held them back from hugging him. When one of them started crying, she told a nearby police officer that he needed to get Kevin away from her. He acknowledged that there was a different occasion where he ran into the children and the

respondent while at a restaurant with his wife and father, and she let the children approach them and visit with them for a few minutes.

¶ 14    The petitioner's counsel did not call the petitioner as a witness at this hearing. After testimony, the petitioner's counsel requested that he be given once-a-month visitation and time around the holidays without the respondent being present. When questioned by the trial court as to why the petitioner did not want the respondent present during the visitations, counsel responded that it limited the amount of time that the petitioner spent with the children, the respondent's presence hindered the petitioner's interaction with the children, and she was a negative presence during the visitations.

¶ 15    On July 19, 2018, the trial court entered an order denying the petitioner's petition for grandparent visitation. In the order, the court found that there had been no unreasonable denial of visitation on the part of the respondent. The court explained that, given the children's health issues, the petitioner's age, and the counselor's recommendation, it was reasonable for the respondent to want to be present during the petitioner's visitations with the children. The court found that there was absolutely no evidence presented that the respondent had interfered with the visitation and that the petitioner's only reason for requesting the respondent not be present was simply that he did not want her there. Moreover, the court concluded that, even if it were to find that the respondent had unreasonably denied visitation, there was no evidence presented that showed that this denial caused the children any undue mental, physical, or emotional harm. The petitioner appeals the denial of his visitation petition.

7

¶ 17    Under the grandparent visitation statute, a grandparent is allowed to file a petition for visitation with the minor child where there has been a unreasonable denial of visitation by a parent, the denial has caused the child undue mental, physical, or emotional harm, and at least one of the conditions listed in subsections (c)(1)(A)-(E) exists. 750 ILCS 5/602.9(b)(3), (c)(1) (West 2016). The conditions listed in subsections (c)(1)(A)-(E) limits a petition for grandparent visitation to situations where there was some breakdown of the traditional nuclear family, such as a divorce, death, incompetency, or incarceration of one of the child's parents. *Id.* § 602.9(c)(1)(A)-(E). There is a rebuttable presumption that a fit parent's actions and decisions regarding grandparent visitation are not harmful to the child's mental, physical, or emotional health. *Id.* § 602.9(b)(4). This presumption is the "embodiment of the fundamental right of parents to make decisions concerning the care, custody, and control of their children which is protected by the fourteenth amendment." *Flynn v. Henkel*, 227 Ill. 2d 176, 181 (2007).[2] Thus, section 602.9 places the burden on the grandparent to prove that the parent's decisions regarding visitation times are harmful to the child's mental, physical, or emotional health. 750 ILCS 5/602.9(b)(3), (c)(1) (West 2016); *Flynn*, 227 Ill. 2d at 181. Neither a denial of an opportunity for grandparent visitation nor the fact that the child may never know a grandparent who loved him is considered harm sufficient to rebut the presumption that a fit parent's denial of a

---

[2]The relevant grandparent visitation statute at issue in *Flynn* was 750 ILCS 5/607 (West 2006). That version of the statute was subsequently repealed and 750 ILCS 5/602.9 (West 2016) was the version of the grandparent visitation statute that was in effect at the time of these proceedings.

grandparent's visitation is not harmful to the child's mental, physical, or emotional health. *Flynn*, 227 Ill. 2d at 184.

¶ 18 In determining whether to grant visitation, the trial court should consider the following statutory factors: (1) the child's wishes; (2) the child's mental and physical health; (3) the grandparent's mental and physical health; (4) the length and quality of the prior relationship between the child and the grandparent; (5) the good faith of the party filing the petition; (6) the good faith of the party denying visitation; (7) the quantity of the visitation time requested and the potential adverse impact that visitation would have on the child's customary activities; (8) any other fact that establishes that the loss of the relationship between petitioner and the child is likely to unduly harm the child's mental, physical, or emotional health; and (9) whether visitation can be structured in a way to minimize the child's exposure to conflicts between the adults. 750 ILCS 5/602.9(b)(5) (West 2016). Further, section 602.9(c)(2) instructs that the court should also consider the following: (1) whether the child has resided with the grandparent for at least 6 consecutive months with or without a parent present; (2) whether the child had frequent and regular contact or visitation with the grandparent for at least 12 consecutive months; and (3) whether the grandparent was a primary caretaker of the child for a period of not less than 6 consecutive months within the 24-month period immediately preceding the commencement of the proceedings. *Id.* § 609.2(c)(2).

¶ 19 A trial court's determination that a grandparent has failed to overcome the section 602.9 presumption will not be disturbed on review unless it is contrary to the manifest weight of the evidence. *Flynn*, 227 Ill. 2d at 181. A court's decision is contrary to the

manifest weight of the evidence when the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on any of the evidence. *In re Anaya R.*, 2012 IL App (1st) 121101, ¶ 50. The reason for this deferential standard is that the trial court, having observed the witnesses and heard their testimony, is in the best position to make credibility determinations. *Id.*

¶ 20    Here, the trial court considered the relevant section 602.9 factors and made the following findings. Regarding the first factor, the children's wishes as to visitation, the court noted that there was no evidence presented as to whether the children wanted unsupervised visitation with the petitioner. As for the second factor, the children's mental and physical health, testimony was presented concerning the minor children's health problems, which included allergies, asthma, and passing-out syndrome. The respondent testified that she was concerned that the youngest child would suffer a fainting spell while in the unsupervised care of the petitioner. There was also unrebutted testimony that the children's counselor recommended, shortly after the father's death, that the children only see their grandparents once a month in a public place. This was recommended because the oldest child was struggling with reminders of her father's death. Concerning the third factor, the grandparent's mental and physical health, testimony was presented by both parties about the petitioner's age, health, and ability to care for the minor children. The petitioner was 74 years old at the time of the June 2016 hearing, and he testified that he was a relatively healthy 74-year-old person even though he recently had a heart procedure (rotoblation).

¶ 21    As for the fourth factor, the length and quality of the prior relationship between the minor children and the grandparent, testimony was presented that, prior to the divorce proceedings, the petitioner's contact with the children was limited to holidays and special occasions and was always in the presence of the respondent or the children's father. After the divorce was filed, the contact was more frequent, but still occurred in the presence of the father. The petitioner never had unsupervised visits with the children. With regard to the fifth factor, the good faith of the party filing the petition, the trial court did not question the good faith of the petitioner's request for visitation. As for the sixth factor, the good faith of the person denying visitation, the evidence showed that the respondent allowed the petitioner to see the children after Sean's death and was willing to continue once-a-month visitation if she was present. The court found that the respondent's wish to be present during the visits was not motivated by ill will and that it was consistent with the history of the petitioner's contact with the children while the respondent and Sean lived together.

¶ 22    Regarding the seventh factor, the quantity of the visitation time requested and the potential adverse impact that visitation would have on the children's customary activities, the trial court found that the petitioner's request for visitation outside of the respondent's presence was not consistent with the children's contact with the petitioner during the respondent and Sean's marriage. As for the eighth factor, any other fact that establishes that the loss of the relationship between the petitioner and the minor children was likely to unduly harm the children's mental, physical, or emotional health, the court found that there was no competent evidence presented on this factor. Concerning the ninth factor, whether visitation could be structured in a way to minimize the children's exposure to conflicts

11

between the adults, the court made no finding. As for the factors identified in section 602.9(c)(2), the court found that the children did not reside with the petitioner for at least 6 consecutive months with or without a parent present, the children did not have frequent and regular contact or visitation with the petitioner for at least 12 consecutive months, and the petitioner was not the primary caretaker of the minor children for a period of 6 consecutive months within the 24-month period immediately preceding the commencement of this action.

¶ 23    After carefully reviewing the record, we conclude that the trial court's finding that the respondent was not unreasonable in denying the petitioner unsupervised visitation with the minor children following the death of their father was not against the manifest weight of the evidence. The respondent testified that she was willing to allow the petitioner visitation time with the minor children. She merely wanted the visitation to be in her presence because she was concerned that the petitioner would not be able to adequately care for the children due to his age and the children's health problems. Moreover, the children's counselor recommended once-a-month visitations in a public place, there was no evidence presented that the respondent interfered in the petitioner's visitation while she was present, and the petitioner never had unsupervised visitation with the minor children before his son's death. We also find that the trial court's conclusion that the petitioner failed to rebut the presumption that the respondent's decision regarding visitation did not result in harm to the minor children's physical, mental, or emotional health, was not against the manifest weight of the evidence. The petitioner presented no direct evidence that any denial of visitation harmed the children. As established in *Flynn*, the denial of an

12

opportunity for grandparent visitation, by itself, is not sufficient harm that will rebut the presumption that a fit parent's denial of grandparent's visitation is not harmful to the child's mental, physical, or emotional harm. *Flynn*, 227 Ill. 2d at 184. Accordingly, we affirm the trial court's denial of the petitioner's petition for grandparent visitation.

¶ 24    Having concluded that the trial court correctly denied the petitioner's petition for grandparent visitation, we now turn to the respondent's request for an award of sanctions. The respondent contends that sanctions are warranted under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994), which permits sanctions if an appeal is frivolous, not taken in good faith, or is taken for an improper purpose. An appeal is frivolous where a reasonable, prudent attorney acting in good faith would not have brought it. *Edwards v. City of Henry*, 385 Ill. App. 3d 1026, 1039 (2008). Appropriate sanctions under Rule 375(b) include an order to pay the other party's damages, the reasonable costs of the appeal or other action, and any other expenses necessarily incurred by the filing of the appeal or other action, which includes reasonable attorney fees. Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). Here, the respondent argues that she is entitled to sanctions because the petitioner's appeal was frivolous in that he did not present any evidence of actual harm to the children.

¶ 25    In view of the lack of evidence upon which to argue that the denial of unsupervised visitation constituted actual harm to the minor children, we find that a reasonable and prudent attorney would not have pursued an appeal in this case. Thus, we find that sanctions, which include the reasonable costs incurred by the filing of this appeal as well as attorney fees, should be imposed on the petitioner for filing a frivolous appeal. We remand to the trial court to determine the amount of those sanctions.

¶ 26                                    III. CONCLUSION

¶ 27   For the foregoing reasons, the judgment of the circuit court of Madison County is

affirmed and the cause is remanded for further proceedings consistent with this decision.


¶ 28   Affirmed and remanded.